Worley et al. v. Naylor et als.

———————◆———————

MARY G. WORLEY and ADAM WORLEY, her husband, Appellants, vs. ALEXANDER NAYLOR, ULYSSES NAYLOR, ARCHIBALD McCLURE, Executor, &c., and LORENZO M. BOARDMAN, Sheriff of Nicollet County, Respondents.

APPEAL FROM THE DISTRICT COURT OF NICOLLET COUNTY.

In a foreclosure of mortgage by advertisement, the notice was first published August 3d, and published successively once in each week up to and including September 14th, the day of sale—*Held*, a sufficient publication under the statute.

The mortgaged premises consisted of four hundred acres of land, lying in three different sections, and in two distinct townships. Three hundred and twenty acres lay *contiguous and in one body*, and eighty acres, separated from the former by intervening lands, and also in one body. The three hundred and twenty acre tract was sold in one parcel, and the eighty acre tract in another. *Held*, that there was no error in selling in this manner, and that the mortgagee was not obliged to offer the lands in government subdivisions, nor in as small subdivisions or parcels as were described in the mortgage.

In this cause a jury trial was waived by the parties, and the following is the finding of the Court, upon which judgment was entered for the Defendants:

The above entitled case was brought on for trial at a reg-

ular term of said Court, held at the court-house in the town of St. Peter, in said county, on the first Monday of June, A. D. 1861. The parties by their counsel waived a trial by jury, and the case was tried by the Court, and having heard the proofs and allegations of the parties, and the argument of counsel, I find the following as the facts and the law in the case :

On the 13th day of July, A. D. 1858, the Plaintiff, Adam Worley, made and delivered to the Defendants, Alex. Naylor and Ulysses Naylor, his promissory note in writing, whereby he agreed to pay to the said Defendants, Alex. Naylor and Ulysses Naylor, or to their order, the sum of fifteen hundred dollars, twelve months after the date thereof, and at the same time, and to secure the payment of the said note, the Plaintiffs, Mary G. Worley and Adam Worley, executed and delivered to the Defendants, Alex. Naylor and Ulysses Naylor, a mortgage deed conveying the south half and the northeast quarter of the south west quarter, and the southwest quarter of the southeast quarter of Section number thirty-three, in Township number one hundred and ten, and the northwest quarter of Section number four, and the south half of the northeast quarter of Section number ten, in Township number one hundred and nine, all being in Range number twenty-seven, west of the 5th principal meridian.

That on the 13th day of July, Defendants, Alex. Naylor and Ulysses Naylor, for a valuable consideration, assigned the said note and the said mortgage to one Nathaniel Wright, as collateral security for a sum of money loaned by the said Wright to the Defendants, Alex. Naylor and Ulysses Naylor; that on the 15th day of July, 1859, default having been made in said mortgage, the said Nathaniel Wright proceeded to foreclose said mortgage by virtue of a power of sale therein contained, and under and by virtue of the statutes of Minnesota providing and regulating the foreclosure of mortgages by advertisement; that a notice of such foreclosure and of the sale thereunder of the said mortgaged premises was published in the Saint Peter *Free Press*, a newspaper printed and published in said county of Nicollet, and that the said notice specified the names of the mortgagees and of the mortgagors,

vol vi.—25

the assignment of the said mortgage, and the assignee thereof, the said Nathaniel Wright, the date of the said mortgage and the time and the place of the record thereof, the date of the said assignment and the time and the place of the record of the same, the amount claimed to be due and which was then actually due on and by virtue of the said mortgage and the said note thereby secured, at the date of said notice, a full description of the mortgaged premises, conforming to the description of the said land as described in the said mortgage, and the time and place of the sale of the said premises, namely : at the office of the Register of Deeds of said county of Nicollet, on the 14th day of September, A. D. 1859, at 3 o'clock in the afternoon of that day ; that the said notice was published in the said paper for the first time on the 3d day of August, A. D. 1859, and was so published for each week successively up to, and including, the 14th day of September, of the said year, on which day the sale was made.   The paper in which said notice was published was printed on publication day about noon, and deposited by the publishers in the post office in the town of Saint Peter, about tea time of same day, but occasional numbers of the paper were delivered on publication day to town subscribers who came into the office prior to the time of deposit in the post office, and shortly after the paper was printed.   The land described in the mortgage lay in three distinct sections, and in two distinct townships.   The south half of the south-west quarter, and the northeast quarter of the southwest quarter, and the southwest quarter of the southeast quarter of section number 33, township number 110, range 27, west, was deeded by Alex. and Ulysses Naylor to the Plaintiff, Mary G. Worley.   The northwest quarter of section number 4, township number 109, range 27, west, was deeded by Ulysses Naylor to plaintiff, Mary G. Worley. The south half of the northeast quarter of section number 10, township number 109, range number 27, west, was deeded by Alex. Naylor to the Plaintiff, Mary G. Worley.  All the land described in the mortgage, except the south half of the northeast quarter of section 10, township 109, range 27, west, lay contiguous and in one body, and was on the day of sale offered and sold as one tract.

The eighty acre tract last above described was by the sheriff on the day of the sale, sold separate from the rest, and was by him sold as one tract or parcel of land. All the land described in the mortgage was on the day of sale, to-wit: on the 14th day of September, 1859, at the hour of 3 o'clock in the afternoon, by the Defendant Boardman, sheriff of said county, so sold at public auction to the highest bidder.

The said Nathaniel Wright was the highest bidder at said sale, and the land sold as aforesaid, was sold to him, and the said sheriff executed to him a certificate of sale for the same.

I find as questions of law in the case, as follows : The assignment of the note and the mortgage from the Defendants Alex. and Ulysses Naylor was sufficient in law to authorize the foreclosure of the mortgage as against the Plaintiff, and there is no reason on their account for setting aside the sale.

The publication of the notice, first on the 3d day of August, 1859, and successively each week up to and including the 14th day of September of the same year, was a good notice under our statute. Such publication furnishes notice for six successive weeks of the sale of the mortgaged premises, and most unquestionably, under the rule for computing time as furnished us by the 43d sec. of chap. 72, Comp. Stat., p. 630, the notice is full and complete.

It is not necessary under our statute in sales by foreclosure of mortgages by advertisement, that the sheriff should necessarily sell each legal subdivision separately. This may or may not be the case. The land included in this mortgage consists of two separate tracts, and were so sold, and the sale in this respect is regular. I see no reason why the sale in this case is not strictly within the spirit and letter of the law, and it should not therefore be disturbed by this Court. The relief prayed for by the Plaintiff must be denied, and judgment ordered for the Defendants for their costs snd disbursements, and it is accordingly so ordered.

Points and authorities of Appellant.

I.—There was not sufficient notice of the sale on foreclosure. Comp. Stat., 644; How. N. Y. Code, 428; 20 Barb.,

148; *"Sales on Execution," Comp. Stat.*, 572; 5 *Wen.*, 127; 1 *Cow. Treat.*, 295; 2 *Story*, 571; 3 *Greenleaf*, 188; 23 *Pick.*, 93; 22 *Pick.*, 571; 9 *Wheat.*, 381; 1 *Pick.*, 485; *Jacobs vs. Graham*, 1 *Black.*, 392; *Arnold vs. U. S.*, 9 *Cranch*, 104; 4 *N. H. R.*, 267; 3 *Penn.*, 300; 11 *Mass.*, 85; *Wiggins vs. Peters*, 1 *Met.*, 127, 129; 1 *Pick.*, 485; 1 *Cow. Treat.*, 295; 5 *Wend.*, 137; *Per Spencer, J, in Jackson ex dem. and Gardiner vs. Clark and another*, 7 *Johns. R.*, 224; *Barb. Sup. Ct. R.*, 119; *Johns. R.* 232; *How. N. Y. Code, p.* 428; 20 *Barb.*, 148; 2 *Mon. Pr., p.* 105; see also analagous cases, 1 *How.*, 77; 8 *Cow.*, 260; *Voorhees N. Y. Code*, 5th *Ed.*, 385, 4th *Ed.*, 344; see also 6 *Cow. Rep.*, 659; *How. N. Y. Code, p.* 628; 11 *How. R.*, 193; *How. N. Y. Code, p.* 428; 20 *Barb.*, 148; 5 *Wen.*, 137.

II.—The premises were not sold in separate parcels.

In sales under execution the same provisions are embodied as to the sales of distinct tracts. See *Comp. Stat.*, 572, the language being, "known lots or parcels." See also *Voorhes Code*, 4th *Ed., p.* 433. See also *Rules N. Y. Sup. Ct., Rule* 50, *p.* 672; *Voorhes Code* and *How. N. Y. Code, p.* 715, *Rule* 74; *By the Chancellor, Kent, in* 1 *Johns. Ch. R.*, 504; *The Am. Ins. Co. vs. Oakley and others*, 9 *Paige, Ch. R., p.* 262; 2 *N. Y. Rev. Stat.*, 369, *sec.* 38; 13 *How. Pr. R.* 556; 16 *How. Pr. R.*, 417; 8 *Am. Cr. L.*, 139, and cases there cited; 2 *Whit. Pr.*, 385.

Points and Authorities of Respondent.

I.—The inquiry seems to be simply this : is this case within the rule prescribed for "the publication of legal notices." *Comp. Stat.*, 630, *sec.* 43, or is both the first and last day of publication to be excluded, and if so, under what rule ?

"The time for publication of legal notices must be computed so as to exclude the first day of publication, and to include the day on which the act or event of which notice is given is to happen, or which completes the full period required for publication."

This statute is general, is not a clause general in its language alone, while a part of an act relating to a particular

subject matter, and that not the subject matter under which the controversy arises ; but it is among the miscellaneous, the general, the universal, the catholic provisions of the statute. And here I remark that it matters less whether the mortgage has one day more or one day less, than that we have certainty and uniformity in our rules governing titles and the trade and commerce of the country.   If this rule does not govern the right of action on a promissory note, a suit not being maintainable on the last day of grace, or the treaty rights of nations, it is simply because the former is within the law merchant, and the latter regulated by the treaty laws and usages of nations, instead of being within the statute provided by the legislative branch of the Government as to "the time for publication of legal notices."

As to our case being sufficient under the rule, the attorney for the Appellants has never denied.   The "act or event of which notice is given" mentioned in the last clause of that section is the sale in this cause, and the day on which that was advertised to " happen," or transpire, is to be included in the computation, having excluded the day of the first publication.   The day on which the event noticed is to " happen," in order to be computed, must be within the final adjunct of the clause quoted, "or which completes the full period required for publication."   Now, what day completed the six weeks for which the law required us to publish the notice ? The forty-second day of the publication, of course, which would have been the thirteenth, instead of the fourteenth day of September, on which we sold, did the law entitle us to every day that our notice was before the world, but as it excludes the first day of publication from the computation, it pushes us along one day, and the fourteenth day of September is required to complete the full period of six weeks or forty-two (42) days.   And this is not only within the statute prescribing the rule of computation of time, but also *Section* 4 of the act providing for the foreclosure of mortgages by advertisement, *p.* 644. For under this section the question what is six weeks, carries us back to the rule of computation, and whether measured by the statute or the calendar, the result is the same.   If the Appellants insist that the statute re-

quires six weeks before and exclusive of the day of sale, thus taking the case out of the rule, I can with equal propriety insist that since they have taken the cause out of the rule, the first day shall be counted, as it is excluded only by the rule. Such measure as they mete unto us, by the same rule must they allow us to measure their rights; they cannot cut off one end of the rule and still insist that their opponents are bound by the other end.

Then, again, *Section* 4 does not provide that there shall be six weeks of publication before nor exclusive of the day of the sale, but silently leaves it subject to the general rule. And it has been decided that where the word "before" was used, the rule still prevailed. Thus the *Code of Procedure of New York*, like our own, provides that notice of trial shall be served "at least ten days before the court." *N. Y. Code*, sec. 256; *Comp. Stat.*, 558, *sec*. 8. Yet it has been uniformly held, whenever the question has arisen, that the first day of the Court was to be counted. *Dayton vs. McIntyre*, 5 *How. Pr. R.*, 117; *Easton vs. Chamberlain*, 3 *How.*, 412; *Phelan vs. Douglas*, 11 *How.*, 193; *Howard's N. Y. Code*, 629; *Westgate vs. Hamlin*, 7 *How.*, 372; 2 *Whittaker's Pr.*, 339; *Small vs. McChesney*, 3 *Wend.*, 19; See also 4 *Com.*, 418; 3 *Denio*, 263.

II.—The second objection to the validity of the sale, is, that the lands were sold in but two parcels, whereas they consist of more than two "farms, tracts or lots." That it appears as a matter of fact, that the lands lay in but two distinct tracts, while they really constitute but a single farm. Though originally pre-empted by several persons, they were all purchased by Adam Worley for one purpose—for one farm; the larger tract for agriculture, the smaller for wood or timber land. The reconveyance by mortgage was in a single instrument, and all one transaction.

We hold the sale under such circumstance a strict compliance with the letter of the statute.

There has been some diversity of opinions and of decisions in this question, but it has been so settled for most of the Western States, and expressly for Minnesota. *Tillman et al. vs. Jackson*, 1 *Minn. R.*, 183; 9 *Ohio*, 19; *Groff vs. Jones*, 6

*Wend.*, 522; *Wood vs. Monell*, 1 *John. Ch. R.*, 502; 5 *Barb.*, 626; 4 *Wheat.*, 503; 3 *Bibb.*, 216; 1 *Burnell's Pr.*, 301.

*Comp. Stat.*, *p.* 644, *sec.* 8, is identical in legal effect with *Sec.* (112), *p.* 572, regulating sales, on execution.

Thomas Cowan, Counsel for Appellants.

Horace Austin, Counsel for Respondents.

*By the Court*—Atwater, J.—This was an action brought by the Appellants to set aside a sale of certain real estate, upon a foreclosure of mortgage by advertisement. The cause was tried by the Court, and judgment rendered for the Defendants, from which they appeal to this Court.

Two objections are made by the Plaintiffs to this sale. First—that the notice of sale was not published the length of time required by statute; and second—that the land was not sold in separate parcels, or tracts, and is therefore invalid. With regard to the first point, the Court below finds that the notice of sale was published in the Saint Peter *Free Press*, a newspaper published in Nicollet County, in which the mortgaged premises were situated.; "that the said notice was published in the said paper for the first time on the third day of August, A. D. 1859, and was so published for each week successively up to, and including the 14th day of September of the said year, on which day the sale was made. The paper in which said notice was published, was printed on publication day about noon, and deposited by the publishers in the post office in the town of Saint Peter, about tea time of same day, but occasional numbers of the paper were delivered on publication day to town subscribers, who came into the office prior to the time of deposit in the post office, and shortly after the paper was printed."

The statute governing the publication of legal notices, is found on *p.* 630, *Comp. Stat.*, *sec.* 43, and provides that "the time for publication of legal notices must be computed so as to exclude the first day of publication, and to include the day on which the act or event of which notice is given is to happen, or which completes the full period required for pub-

lication." This is a general provision applicable to all cases not otherwise specifically provided for. *Sec. 4 of p.* 644, *Comp. Stat.*, provides that notice of sale shall be given by publishing the same for six successive weeks at least once in each week, but does not define precisely how the time shall be computed; providing however, that the publication shall be at least six weeks. Applying the rule above quoted to this case, it appears that the notice was published six weeks, as required by statute. Excluding the 3d day of August, the day of the first publication, and including the 14th day of September, the day of the sale, makes forty-two days, or six weeks of seven days each. The notice was in fact published seven times, once more than was requisite. The day which completed the full period required for publication was the forty-second, excluding the first, and that day is to be included in the computation, as that on which the "act" or "event," of which notice is given is to happen, that is, the sale in the cause. We know of no rule on which it can be contended, that both the first and last days of publication are to be excluded, in computing the six weeks, where the last publication is on the forty-third day from the first. It will be observed that *Section* 4 above referred to, does not provide that there shall be six weeks before, or exclusive of the day of sale, but leaves the computation to be controlled by the general rule. But even in cases where this word is used, it has been held that the day on which the act is to be done, or event happen, is to be included. *N. Y. Code, sec.* 256; *Comp. Stat., p.* 558, *sec.* 8; 5 *How. Pr. R.,* 117; 3 *How.,* 412; 11 *How.,* 193. And where, under the law of New York, personal notice of the sale was to be served on the mortgagor, fourteen days before the sale, a service on the first for the fifteenth was held good. *Westgate vs. Handlin,* 7 *How.,* 372. As the statute has specifically provided for the computation of time in these cases, that must govern, and it is unnecessary further to discuss the bearing of decisions in analagous cases, but under different statutes or rules of court.

With regard to the second objection, the facts found by the Court are substantially as follows : that " the land described in the mortgage lay in three distinct sections, and in two dis-

tinct townships. The south half of the southwest quarter, and the northeast quarter of the southwest quarter, and the southwest quarter of the southeast quarter of section number 33, township number 110, R. 27 W., was deeded by Alexander and Ulysses Naylor to the Plaintiff, Mary G. Worley. The northwest quarter of section number four, T. 109, R. 27, W. was deeded by Ulysses Naylor to Plaintiff, Mary G. Worley. The south half of the northeast quarter of section No. 10, T. 109, R. 27 W., was deeded by Alex. Naylor to the Plaintiff. All the land described in the mortgage, except the south half of the northeast quarter of section 10, T. 109, R. 27 West, lay contiguous and in one body, and was, on the day of sale offered and sold as one tract. The 80 acre tract last above described was, by the Sheriff, on the day of sale, sold separate from the rest, and was by him sold as one tract or parcel of land."

The Appellant claims that the premises were not sold in "separate parcels," as required by Statute, and that they should have been offered and sold according to government legal subdivisions. The land was offered and sold in two parcels, one of 320 acres, and one of 80 acres.

*Sec. 8, of page* 644, *Comp. Stat.* provides that "if the mortgaged premises consist of distinct farms, tracts or lots, they shall be sold separately, and no more farms, tracts or lots shall be sold than shall be necessary to satisfy the amount due on the mortgage at the date of the notice of sale, with interest, and the costs and expenses allowed by law."

In regard to the first parcel of 320 acres, the complaint alleges that "the said land being in four separate and distinct subdivisions, tracts or lots, and being two distinct farms." Whether the premises consisted of two or more distinct farms or tracts, was a matter to be determined by the evidence. All that appears upon the subject, in the case presented to this Court, is in the finding of the facts by the Judge who tried the cause, who states that the same "lay contiguous and in one body." It is admitted, however, that the same lay in different townships and sections. The question, therefore presented is, whether the Sheriff was bound to offer the premises

for sale by government subdivisions, or in as small subdivisions or parcels as are described in the mortgage.

We cannot think it was intended by the Legislature to give the Statute above quoted as limited a signification as is claimed for it by the Appellant. The language must be taken in its ordinary acceptation ; and the meaning of the word farm, as given by Webster, expresses, perhaps, the popular idea, as correctly as any other that could be given. He defines it as " a portion or tract of land, consisting, usually, of grass land, meadow, pasture, tillage and woodland, cultivated by one man, and usually owned by him in fee." It could scarcely be claimed that because such a body of land might be made up of land laying in different sections, or even townships, that such parcels constituted " distinct " farms, either within the purview of the statute, or in any manner whatever. Nor would the fact, that such body of land had been acquired from different owners, make distinct farms of the parcels in the hands of the purchaser. The object with which a body of land is held by the owner or occupant, the manner of its use, and the conveniences attaching to it for farming purposes, would be circumstances entitled to far more weight in determining whether it is to be considered as one farm, than imaginary lines drawn by government for its convenience in disposing of the land. The use of the term " distinct," in this connection, must mean a separation, by some natural means or boundary, or by intervening space, and not simply a portion which may be described by arbitrary imaginary lines. Clearly so, as applied to farms, since no farmer, having under improvement a body of land composed of different subdivisions lying contiguous, ever speaks of them as different farms. And if such be the construction as to the word " farms," it must equally apply to the word " tracts," used in the same connection, and having reference to the same subject matter. If by the terms employed in this section, the Legislature intended that the farms or tracts of which the mortgaged premises consist, should only be sold according to the legal subdivisions recognized by government, they have adopted language but poorly calculated to convey their meaning, when the most apposite terms would seem ready at hand. By the

use of the word lots, I understand to be meant town or city lots, which, in conveyancing and sales, are usually described by their numbers upon a recorded plat.

In a statutory foreclosure, the aid of a Court of Equity is not invoked, and the object of the Statute regulating these sales, is to have them fairly made, and as nearly in accordance with the principles established by Courts of Equity in like cases as may be. It is a well settled and familiar principle with these courts, that the mortgaged property shall be so disposed of as to bring the best price possible, consistently with the preservation of the rights of the mortgagee ; but there are no arbitrary and inflexible rules requiring property to be offered and sold in legal subdivisions, or in any particular parcels or quantities. Each case must depend upon its own particular circumstances, and where any question is made as to the proper method of sale, the Court will order proofs to be taken, in order to give directions as to the disposition of the property. In the case at bar, unless the Statute itself requires the premises to be sold in legal subdivisions, the Plaintiffs fail to make out a case for the interference of this Court, since the allegations of the bill are not sufficiently definite and specific in showing injury sustained by the sale as it was actually made ; nor has the defect been supplied by the proof. Even where a sale is made in accordance with the provisions of statute, circumstances may exist entitling the mortgagor to relief, and where these are made clearly to appear, a Court of Equity would be justified in interfering to protect the interests of the mortgagor. But such a case is not here presented, and the judgment below must be affirmed.