## Case No. 12,690.

SEYMOUR et al. v. SANDERS et ux.

[3 Dill. 437.] [1]

Circuit Court, D. Minnesota. 1874.

PUBLIC LANDS—HOMESTEAD ACT—EXEMPTION PROVISION.

1. The fourth section of the homestead act of congress of May 20. 1862 (12 Stat. 393), which provides that no lands acquired thereunder shall in any event become liable to any debt contracted prior to the issuing of the patent therefor. is valid and binding upon the states.

[Cited in Fink v. O'Neil, 106 U. S. 283, 1 Sup. Ct. 334.]

2. The power of congress to dispose of the public domain. and the policy of the above exemption provision in the homestead act, considered.

[Cited in Paige v. Peters, 70 Wis. 182, 35 N. W. 329.]

This was an action of ejectment [by William H. Seymour and others. against Daniel Sanders and wife] to recover possession of eighty acres of land in Goodhue county, Minnesota. The plaintiffs allege that they were owners of the land November 1st. 1872, and that the defendants unlawfully detain the same. The defendants in their answer allege

1 [Reported by Hon. John F. Dillon. Circuit Judge, and here reprinted by permission.]

that ever since April 10th, 1868, they have been and before that time were, and still are owners in fee of said lands and are in possession thereof, and that Daniel Sanders duly entered it at the local land office under the homestead act of congress (12 Stat. 392), and holds and occupies it as a homestead with his family, and that no patent has ever been issued. The cause was tried on a stipulation as to the facts. From this stipulation it appears that Daniel Sanders, on March 14th, 1863, settled upon, improved and entered, one hundred and sixty acres of the public lands under the said homestead act. That he complied with said act and proved, perfected and completed his right to a title on April 10th, 1868, and on that day became entitled to a patent and received the final certificate, signed by the proper receiver of the United States land office. It does not appear that the patent has yet issued. The plaintiffs obtained judgment in the state court against Daniel Sanders on May 25th, 1868, and on the same day docketed it in the office of the clerk of that court in Goodhue county, where the land was situated.

By Gen. St. Minn. pp. 485, 486, § 254, judgments are liens on all the real property of the judgment debtor in the county or afterwards acquired by him. The plaintiffs issued execution on this judgment August 30th, 1871, and Sanders selected and the sheriff set off to him as exempt, the south half of the said 160 acres, under the state exemption laws (Gen. St. Minn. p. 498, c. 18), and sold the north half (being the land in dispute) to the plaintiffs on October 21, 1871. One year from such sale expired and no redemption was made from the sale, and under the statute the certificate became evidence of absolute title in plaintiffs without further conveyance. Gen. St. Minn. p. 491, § 290.

Daniel Sanders made a deed of this eighty acres of land to his wife, Mary Ann Sanders, on April 23d, 1868, and for that reason she is made a defendant. This deed was not recorded until June 24th, 1869. By Gen. St. Minn. p. 500, § 2, such a deed is permitted if the conveyance contains a power of disposition by deed, will, or otherwise (Leighton v. Sheldon, 16 Minn. 243 [Gil. 214]), but is void as to his creditors unless recorded in proper registry within seventy days after its execution and delivery. This deed does not contain such power and was not so recorded. The plaintiffs were his creditors, and as such claim that the deed to the wife was void. The stipulation provides that if the fourth section of the homestead act, so called (12 Stat. 392), is, in its application to this case, constitutional, and a valid and binding regulation of the judicial power and policy of the state of Minnesota and paramount to the state laws and regulations in regard to exemptions from levy and sale on writs of execution, then judgment shall be given for the defendants, otherwise for the plaintiffs.

The General Statutes of Minnesota (page 448, § 269) provide that all property, real, personal or mixed, belonging to the defendant in the execution may be levied upon and sold. But by the same statutes (page 498, § 1) it is provided that a homestead in quantity not exceeding eighty acres and the dwelling house thereon, to be selected by the owner thereof, and owned and occupied by any resident of this state, shall not be subject to levy or sale upon execution. The act of congress approved May 20th, 1862 (12 Stat. 393), provides that no lands acquired under that act shall in any event become liable to the satisfaction of any debt or debts contracted prior to the issuing of the patent therefor. By the act of congress approved February 26th, 1857 (11 Stat. 167, § 5), authorizing the people of Minnesota to form a constitution, it was provided that the state should "never interfere with the primary disposal of the soil within the same by the United States, or with any regulation congress might find necessary for securing the title in said soil to bona fide purchasers thereof." These provisions were incorporated into the state constitution (article 2, § 3), and were ratified by a vote of the people. The state was admitted into the Union May 11th, 1858, on an equal footing with the original states.

Chas. C. Wilson, for plaintiffs.

C. & J. C. McClure, for defendants.

Before DILLON, Circuit Judge, and NELSON, District Judge.

DILLON, Circuit Judge. Congress is invested by the constitution with the express power of disposing of and making all needful rules and regulations respecting the public domain. This gives to congress authority to dispose of the public lands without limitation, and leaves to its discretion the mode of disposition. U. S. v. Gratiot, 14 Pet. [39 U. S.] 526.

If the land here in question were within one of the territories of the United States it would hardly be doubted that congress could lawfully provide in an act for the disposal of the public lands that it should not be liable for debts contracted by the homestead settler prior to the issue of the patent. This the learned counsel for the plaintiffs conceded, but they claim that sec. 4 of the homestead act of congress, of May 20th, 1862, should be limited in its application to the public domain outside of the respective states. But the power of congress within the limits of the state of Minnesota is, in our judgment, precisely the same as respects the mode and purposes of disposing of the public lands, as it is within the territories.

Over the public lands, so far as concerns their disposition, whether as to time, mode or objects, the state has no authority whatever. On the other hand, the authority of congress is paramount and exclusive. Any question upon this subject which might otherwise exist, growing out of the respective powers of the state and federal governments, is precluded by a solemn compact in the act

providing for the admission of the state, and in the constitution of the state itself, to the effect that the state would "never interfere with the primary disposal of the soil within the same by the United States, or with any regulation congress might find necessary for securing the title in said soil to bona fide purchasers thereof."

Thus the plenary power of congress over the disposition of the public lands within the state is expressly recognized to exist by the organic law of the state; and we hold that congress may dispose of them at such time, in such manner, and for such purposes as in its judgment it may deem best.

The title to all public lands must pass and vest according to the laws of the United States. Wilcox v. Jackson, 13 Pet. [38 U. S.] 498, 517. And, undoubtedly, it is true as a general proposition, that after the title has passed from the United States, and is fully vested in purchasers from it, the land becomes subject to state legislation, and the power of the general government with respect to it ceases, except so far as it is otherwise lawfully provided in the act by which congress disposes of the land.

It has been expressly adjudged by the supreme court that congress cannot be confined to any particular mode of disposition, but may lease or otherwise dispose of the public domain in its discretion. U. S. v. Gratiot, supra.

Down to 1862, congress had never adopted the policy of offering the public lands to those who would cultivate and make permanent homes upon them, and the act of May 10th, of that year, is the first homestead law of the general government. It would be difficult, perhaps, to point to any enactment of the federal congress more wise in conception, just in policy, and beneficial in results, than this. And these benefits were chiefly to the states by securing therein at an early day a large body of permanent settlers upon the public lands. By the act a quantity of land not exceeding 160 acres is given to any head of a family possessing the required qualifications, on condition of settlement, cultivation and continuous occupancy as a home by the settler for the period of five years. During this period the settler is prevented from alienating any part of it, or from making any actual change of residence, or from abandoning the land for more than six months at any time. If he complies with the provisions of the act, he becomes entitled to a patent at the end of five years.

Section 4, the validity of which, in its application to this case, is the question to be settled, is in these words: "No lands acquired under the provisions of this act shall, in any event, become liable to the satisfaction of any debt or debts contracted prior to the issuing of a patent therefor."

It is not difficult to discover the reason for this provision. A leading object of the enactment was to benefit the poor man who was unable to buy the lands at government price and receive his title at once and without conditions; and it undoubtedly occurred to congress, that many persons who had been unfortunate and were insolvent would avail themselves of the act; and conceiving that the creditor in such cases had no equity to subject to the payment of his debt lands which had been given to the debtor by the bounty of the government, and to protect the debtor and to encourage persons to settle upon the public domain under the act, the fourth section was adopted. In the case before us the debt upon which the plaintiffs obtained judgment was created after the defendant had settled upon the land under the homestead act of congress, and before the expiration of the five years, so that the creditor was all along apprised that the land was not liable to the payment of his debt, and certainly he is without just ground of complaint against the exemption. His legal ground of objection, however, is that the exemption is an invasion of the lawful rights of the state, and conflicts with her laws, which exempt only 80 acres of land to the debtor. It will be observed that congress does not attempt to exempt the land from debts contracted after the patent has issued, or, in other words, after the title has passed from the general government. Before the title has thus passed, congress, under its power to dispose of the public lands, may prescribe the terms and conditions upon which the disposition shall be made, and as against the state, it is our judgment that it was competent for congress as incidental to the power of disposal of the lands, and to promote the enlightened and humane policy it had in view, to provide that the lands acquired by the homestead settler should be held by him free from all antecedent debts.

This question, which is one of great practical moment, and affecting, as counsel inform us, very many persons, does not appear to have before arisen for judicial determination, but we feel quite confident that our conclusion is correct.

Agreeably to the stipulation of counsel, in case we should be of opinion that the fourth section of the act is valid, judgment will be entered for the defendants.

NELSON, District Judge, concurs in the foregoing, and is of opinion also that the same result follows from the fact that no patent has ever emanated from the government, and hence the plaintiff not having legal title cannot maintain ejectment.

Judgment for defendants.

NOTE. Since the foregoing opinion was delivered, the supreme court of Minnesota, in the case of Russell, respondent, v. Lowth & Howe [unreported], appellants, have decided, under section 4 of the homestead act of May 20. 1862, that land patented to an actual settler under said act of congress does not become liable for debts of the patentee contracted prior to the

issuing of the patent, if conveyed to another person. The provision of the state constitution "that this state shall never interfere with the primary disposal of the soil within the same by the United States, or with any regulations congress may find necessary for securing the title to said soil to bona fide purchasers thereof" (article 2, sec. 3) is an express inhibition of the state legislature to pass any law subjecting lands patented under the act of congress known as the homestead act, to levy and sale upon execution, issued upon a judgment for a debt of the patentee created prior to the issuing of the patent. Same principle, see Miller v. Little (1874) 47 Cal. 348. In Nycum v. McAllister, 33 Iowa, 374, it was held that the provision in section 4 of the federal homestead act of May 20, 1862, which provides that "no lands, acquired under the provisions of this act shall become liable to the satisfaction of any debt contracted prior to the issuing of the patent," was not designed to disable the settler from mortgaging his interest in the premises before the issuing of the patent. In this case the right of a mortgagor to a patent was perfected, he having resided on the premises more than five years.

SEYMOUR (SEAVEY v.). See Case No. 12,-596.

SEYMOUR (STANTON v.). See Case No. 13,-298.

SEYMOUR (SWIGGETT v.). See Case No. 13,701.

SEYMOUR, The WESLEY. See Case No. 17,-420.

S. G. ANDREWS, The (MUTUAL FIRE INS. CO. v.). See Case No. 9,978.

S. G. OWENS, The (McDERMOTT v.). See Case No. 8,748.

S. G. OWENS, The (WEAVER v.). See Case No. 17,310

SHACKELFORD (MURDOCK v.). See Case No. 9,937.

SHACKELFORD (UNITED STATES v.). See Cases Nos. 16,260 and 16,261.

SHACKFORD (UNITED STATES v.). See Cases Nos. 16,262 and 16,263.