Cox vs. Donnelly et al.

---

---

## COX VS. DONNELLY et al.

1. HOMESTEAD LANDS : *Contracts for sale of, before completion of entry.*
   An agreement by a homestead enterer under the homestead act of congress, of May 20, 1862, for the sale and conveyance of part of the land, made before completion of the entry, is in violation of the act, and against public policy, and void.

2. CONTRACTS AGAINST PUBLIC POLICY: *Relief in equity, when granted.*
   Although, in general, courts of equity will not grant relief to persons who are parties to agreements or other transactions against public policy, there are cases where the public interest requires that they should, for the promotion of public policy, interpose; and in such cases the relief is granted to the public through the party.

APPEAL from *Hempstead* Circuit Court in Chancery.
Hon. J. K. YOUNG, Circuit Judge.
*Gallagher & Newton, Dan Jones,* for appellant.
*Williams & Battle, contra.*

HARRISON, J. This was a suit in equity, by Anson B. Cox, against Patrick Donnelly, William W. Strickland, Alice L. Levinson and Sarah Hirschfield, for the specific performance by said Donnelly of an agreement for a sale of certain lots in the town of Hope, and to set aside and cancel certain deeds from him to the other defendants.

Donnelly, on or about the fourth day of July, 1873, applied to the register of the land office at Camden, to enter,

as a homestead, the east half of the northwest quarter of section thirty-three, in township twelve, south, range twenty-four, west, but found that it had been already entered as a homestead by James Ferrick. Ferrick, at the instance of Donnelly, relinquished his claim, and his entry was canceled. After the relinquishment of Ferrick's claim, but before the cancellation of his entry at the general land office, Donnelly, who was residing on the land, left or deposited with the register an application to enter it; after doing which he laid off a part of the tract into town lots, as an addition to the town of Hope.

Before the lots were laid off, however, and about the month of August, 1873, he entered into a verbal agreement with the plaintiff and his partner, Joshua B. Davis, to sell them, as the complaint alleged, that parcel of the tract which, when the lots were laid off, constituted the larger part of lot 7, in block 29, a fraction of it belonging to another tract, and which, in speaking of, we shall call lot 7, for what an adjoining vacant lot would be worth when he should obtain a title to the land. Donnelly, in his answer, said that the agreement was that they should have the lot at an annual rent of $100, payable in monthly installments, until he obtained his title, and then have the privilege to purchase it at a fair price, or to remove their improvements, if the rent was paid up, as they might elect.

As proven or found by the court, however, the agreement was, that they should have the lot at a rent of $100 a year, and when he obtained the title to the land, they should have the right to purchase it by paying what an adjoining vacant lot would then be worth; or, if they preferred, to continue in the occupancy of it until the rent amounted to the value of the improvements they had put upon it.

Cox and Davis, under the agreement, entered into the possession of the lot, and built a store-house and made other improvements upon it; and in December or January following, they made a similar agreement in respect to lot 8 of the same block. The two agreements were stated in the complaint as one, and may be so treated. Davis subsequently sold and transferred his interest in the lots to Cox.

Ferrick's entry having been canceled, Donnelly, on the second day of February, 1874, made application again, and formally, to the register to enter the land as a homestead, and did so; and on the third day of August, 1874, he paid the government $2.50 an acre—the minimum price—for the land, and received the certificate, and afterwards, the patent.

Donnelly, in August, 1874, after receiving the certificate, sold lot 8 to Smith and Galloway, who paid him for it, and some time after, in that year, they sold the south half of it to the defendant Strickland, and the north half to the defendants Levinson and Hirschfield; and deeds of conveyance were executed by Donnelly to them, respectively.

Cox, after Donnelly had perfected his title, elected to purchase the lots. Donnelly refused to comply with his agreement in respect to lot 7, and he had, as just stated, before sold and conveyed lot 8.

Donnelly made his answer a counter-claim, and prayed a decree for the rents of the lots, none of which, except a small part of that of lot 7, he averred, had been paid; and for general relief.

The other defendants denied any knowledge of the plaintiff's claim to lot 8 previous to their respective purchases and payment of the purchase-money.

The court held and adjudged the agreement void, and

decreed that the possession of lot 7 should be surrendered and delivered up by the plaintiff to Donnelly; and having directed an account to be taken of the value of the improvements upon it, and also of the rents and profits, that Donnelly pay to the plaintiff the sum of $555, the excess of the former over the latter.

The plaintiff appealed.

The homestead act of congress of May 20, 1862, requires: That before any person shall be allowed to enter land as a homestead, he shall make oath before the register or receiver that the entry is made for the purpose of actual settlement and cultivation, and for his exclusive use and benefit, and not, either directly or indirectly, for the use or benefit of any other person; and he must, before a certificate will be given or patent issued, prove by two credible witnesses, that he has resided upon or cultivated the land for five years immediately succeeding his entry; and also make oath that no part of the land has been alienated. And although he may before the expiration of the five years, on making proof of settlement and cultivation as provided by the pre-emption laws, pay the minimum price, and obtain a patent, as was done in this case, his right to do so is derived from his application and affidavit previously filed.

The agreement was clearly in contravention of the act. *Warren v. Van Brunt, 19 Wall., 646; Seymour v. Sanders, 3 Dill., 437; Oaks v. Heaton, 44 Iowa, 116; Dawson v. Merrill, 2 Neb., 119; Clark v. Bailey, 5 Oregon, 343; The St. Peter Company v. Bunker, 5 Minn., 192.*

And it is a proposition admitting of no exception, that contracts in violation of law or against public policy are void, and courts will not lend their aid to enforce them.

It is urged that the court should have refused relief to

Donnelly also, and not have decreed him possession of the lot.

Although, in general, courts of equity will not interpose to grant relief to persons who are parties to agreements or other transactions against public policy, there are cases where the public interest requires that they should, for the promotion of public policy, interpose, and the relief in such cases is given to the public through the party. *1 Sto. Eq. Jur., sec. 298; 2 Kent's Com , 467; Hatch v. Hatch, 9 Vesey, 292; Lord St. John v. Lady St. John, 11 ib., 526; Jackman v. Mitchell, 13 ib., 581; Morris v. MacCullock, 2 Eden, 113; Law v. Law, 3 P. Williams, 391; Austin v. Winston, 1 Hen. & Mun., 33; Hale v. Sharpe, 4 Cold., 275.*

Public policy demands that the purpose or object of the law under which Donnelly entered the land should not be defeated, and that the plaintiff should not be allowed to hold what he had obtained possession of in violation and disregard of its provisions.

There is no error in the decree, and it is affirmed.