Burke v. City of Chicago.

---

### Robert E. Burke v. City of Chicago et al.

#### Gen. No. 12,466.

1. ORDINANCE—*when fixing compensation of official, invalid.* An ordinance fixing the compensation of a city official is invalid where in conflict with the statute which fixes such compensation.

2. ORDINANCE—*when invalid.* An ordinance in material conflict with a statute upon the same subject, is invalid.

3. PUBLIC POLICY—*when contract contrary to.* A contract to accept less than the compensation prescribed by law is opposed to public policy and void.

4. PLEDGE—*when may be recovered.* A pledge delivered subject to conditions to be performed, which were not performed and which never could be performed, should be returned to the owner.

5. CONTRACT—*when money paid under illegal, may be recovered.* Where money has been paid under an illegal contract, it is a general rule that if the contract be executed and both parties are *in pari delicto*, neither of them can recover from the other the money so paid, but if the contract continues executory and the party paying the money be desirous of rescinding it, he may do so and recover back by action of *indebitatus assumpsit* for money had and received.

BAKER, J., dissenting.

Bill for injunction. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch

Appellate Court at the October term, 1905. Reversed and remanded, with directions. Opinion filed May 29, 1906.

**Statement by the Court.** Appellant Burke filed the bill in this case to reclaim a pledge or deposit of $30,000 held by appellee, the City of Chicago, as security for the difference between the amount of fees reported and paid over to the city by appellant as oil inspector and the amount of fees collected by him as such oil inspector. The bill prays for a preliminary and permanent injunction restraining the defendants from in any way using or appropriating said money, and from commingling it with the funds of the city, and that defendants be decreed to deliver up to complainant said $30,000 so deposited, and for general relief.

A preliminary injunction was granted without objection by defendants' solicitors. On hearing the court dismissed the bill for want of equity, but continued the injunction in force pending this appeal.

By the joint and several answer of the city of Chicago and Lawrence E. McGann and Ernest Hummel, who were parties defendant as comptroller and treasurer respectively of the city, it appears among other things that the city of Chicago was incorporated about April 25, 1875, under the City and Village Act, approved April 10, 1872; that by an ordinance passed in April, 1897, the ordinances of said city as edited, revised and codified by the corporation counsel were ordered printed and published in bound volumes and that volume 1, entitled "Revised Code of Chicago," includes the general ordinances of the city.

By sections 1353 to 1364 inclusive of chapter XLV thereof, the office of inspector of oils is created, his term fixed at two years and until his successor qualifies, his salary, in lieu of all fees and emoluments, is fixed at $300 per month, payable at the end of each month in the same manner as the salary of other city officers. It is provided that oil inspectors shall be appointed by the mayor with the consent of the council on the first Monday of May and biennially thereafter, and shall give bond to the city in

the sum of $10,000. The duties of oil inspectors are pre-scribed, and they are required to collect in cash for their services at the rate of six cents for each package. The of-fice expenses, other than salaries and maintenance of in-struments and apparatus, shall be paid by the comptroller, and the inspector shall, on or before the tenth day of each month, make report in writing to the comptroller verified, showing fees collected in preceding month, and pay the same to the city treasurer.

Appellant Burke was appointed oil inspector for the city of Chicago by the mayor with the concurrence of the coun-cil in May, 1897, and served as such until some time in October, 1901, when he resigned. With each successive appointment he gave a bond to the city as provided in the ordinance. No bond to the people was given or required of him, nor was the penal sum for such bond fixed by the mayor or council as provided by statute. He made monthly reports to the city comptroller of the receipts and expenses of the office, and turned over monthly to the city treasurer the receipts so reported. For the purposes of this case it is admitted that appellant Burke collected fees while serv-ing as oil inspector upwards of $30,000 more than he re-ported and turned over to the city treasurer.

For several days prior to October 5, 1901, the grand jury of Cook county had under consideration the affairs of Burke's office, and had before it the books and files of his office, and also City Comptroller McGann and the books and files of his office. Appellant Burke received informa-tion of this and feared that an indictment for embezzling fees collected by him as oil inspector would be returned against him. Not being able to communicate with the mayor or corporation counsel, he arranged an interview with City Comptroller McGann. There is some dispute as to what occurred at the interview, but at its close appellant Burke delivered to Comptroller McGann two checks, one for $20,000 and one for $10,000, which were cashed and the proceeds entered upon the treasurer's books, and appear in the comptroller's and treasurer's reports as follows:

"R. E. Burke, Oil Inspector,

Amount deposited with city treasurer, $30,000."

"R. E. Burke, Special Account, $30,000."

"Trust Fund, $30,000."

Later in the day Burke was indicted for embezzlement. After demanding of the city the return of the deposit, appellant Burke brought this suit to compel the return of the fund so deposited.

W. H. BARNUM, for appellant.

MACLAY HOYNE, for appellees; JAMES HAMILTON LEWIS, Corporation Counsel, of counsel.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

No question is raised on the record or in argument as to the jurisdiction of a court of chancery to hear and determine this case on the ground that there is an adequate remedy at law. That question is therefore not before us.

Appellant's theory of the case is that the $30,000 in question was not paid to or received by the city of Chicago as a payment, but as a pledge or deposit to secure to the city the payment of whatever might be found ultimately to be due the city from appellant, and that the title to the money therefore remained in Burke; that the ordinance relied upon by the city providing that the fees of the oil inspector should be turned over by him to the city, and that he should receive a salary in lieu of the fees was void, being in material conflict with the statute of the State, chapter 104 of the Revised Statutes of Illinois; that any so-called agreement between the city and Burke at the time of Burke's first taking the office in 1897, to the effect that Burke should accept the salary fixed by the ordinance as full compensation for his services as oil inspector in lieu of all fees or other compensation was illegal, null and void, and, therefore, appellant Burke was never under any legal obligation to turn over to the city the fees received by him as oil inspector. And, further, that inasmuch as the pledge

of the fund was never executed and the money applied in payment of the fees, but remains executory, appellant may repudiate the arrangement and reclaim the pledge.

The position taken by appellees, on the other hand, is (1) assuming that the ordinance is invalid because inconsistent with the statute on the same subject, since the statute is not self-executing, but requires action by the mayor and city council to fix the compensation of oil inspector, Burke was never entitled to any compensation whatever. (2) A public officer is entitled to no compensation, but must serve the public without charge, unless he can point to an express statutory provision which fixes his compensation or express legislation of a subordinate government agency fixing such compensation passed in the exercise of a lawfully delegated authority. (3) Appellant turned over the $30,000 voluntarily as a payment under a mistake of law and cannot recover it. (4) If it be assumed that the $30-000 was turned over as a pledge to secure the performance of an illegal contract, appellant is not entitled to a decree, because he has made no tender of the amount of the debt. (5) Appellant does not come in court with clean hands. (6) The ordinance of 1897 relating to oil inspection is valid.

The first question to be determined is whether the fund in question was deposited as security as claimed by appellant, or whether it was a payment as claimed by appellees. The evidence on this question presents the only controversy of fact in the case.

The testimony of appellant Burke is that about one o'clock P. M. October 5, 1901, he learned that the grand jury was investigating his office, and in the absence of the mayor and corporation counsel from the city he arranged for an interview with Comptroller McGann. At the interview McGann told him that he had been before the grand jury and that they claimed there was a shortage of $16,000 in Burke's accounts as oil inspector. Burke claimed there was no shortage and that there was nothing due to the city, but if there was any he would put up a check to secure it,

and he at once gave a check for $20,000. About an hour later he called up McGann and told him that he had heard it was claimed that there was a further shortage of about $7,000, and Burke immediately sent over a check for $10,000 as security for any claim that might be made against him on that account. The checks were made out to McGann as city comptroller.

Mr. McGann's version of the interview is in substance as follows: Burke on meeting him said that his office was under investigation by the grand jury, and asked him what he should do in regard to any alleged deficit in his accounts. McGann suggested to him that it was an important question, and that he had better advise with his attorney. After a few moments Burke left McGann, but soon returned and handed McGann a check for $20,000 to be applied to any shortage or deficit that might appear in his accounts, with the statement that he relied upon his deputy for looking after the details of the office, and he wanted to make good any sum of money that might be due on account of any shortage that would appear. McGann took the check and returned to his office. In a short time he received from Burke a telephone message that it was claimed the shortage would exceed the amount of the check handed to him, and that Burke would send another check by messenger. Soon thereafter a messenger handed him a check for $10,000. The two checks were placed to the credit of Burke's account to be applied in the event of a deficit appearing from an examination. Burke did not say or suggest that the money be held in trust except so far as to apply it to his account when a deficit should appear. Prior to that time McGann had no knowledge or information that Burke was short in his accounts. McGann did not make any demand or request of Burke to pay any money or make any threats. The money was placed as a special deposit until Burke's accounts could be examined. McGann could not remember that the word "payment" was used in the interview. This account is headed, "Trust Account," and so appears in the reports of 1901 and 1902.

It was admitted by counsel for appellees that in the comptroller's reports for 1901 and 1902 the item in question appears as follows : On page 86 of the 1901 report is the entry, " R. E. Burke, oil inspector, amount deposited with city treasurer, $30,000." On page 38 is the entry : " R. E. Burke, special account $30,000." On page 39 under the heading " Trust Fund" appears "Trust Fund $30,000." Substantially the same items or entries appear in the comptroller's report for 1902.

It is admitted in the appellee's answer that McGann on October 7, 1901, indorsed and delivered the checks to the city treasurer, that the treasurer collected and held in deposit the proceeds $30,000 and entered the same on his books under a special account as alleged in the bill; that the same has remained in the possession of the city in the keeping of its successive treasurers as a special fund and has never been appropriated on any other account.

The conclusion of a majority of the court from this evidence is that the handing over of the checks to the city comptroller was not a payment by Burke, nor were the checks or the money received on them received by the city as a payment. No demand had been made upon Burke for any amount or amounts of money, and the checks did not correspond in amounts to the alleged shortage in either case. The money was not treated by the city as having been paid, but was held as a " special deposit " to secure any shortage in Burke's accounts of fees of the oil inspector's office which might appear upon examination.

Considering the testimony of McGann by itself it shows, we think, that the $30,000 in question was handed over to him by Burke in a manner and under circumstances which fall short of proving that it was a payment. It was according to his testimony to be applied on Burke's account in the event a deficit therein appeared on examination. Mr. McGann testified that he handed over the checks to the city treasurer. We must infer then that the special entries made on the treasurer's books above quoted were made at McGann's suggestion or in consequence of the statements

made by him to the treasurer of the conditions upon which the checks were received. In conformity with the information conveyed by McGann with the delivery of the checks to the city treasurer, the entry was made in the treasurer's books and copied into the treasurer's reports, "R. E. Burke, oil inspector, amount deposited with city treasurer $30,000;" "R. E. Burke special account $30,000;" "Trust Fund $30,000." These entries may reasonably and fairly be held to have been made at McGann's suggestion and to express his understanding at the time of the nature and purpose of the transaction. McGann's official reports over his own signature as comptroller establish a pledge, not a payment of the money in question.

Comparing McGann's testimony and his acts in turning over the checks to the city treasurer upon the conditions indicated by the above entries in the treasurer's books, with the testimony of appellant Burke, no difference in legal effect can be perceived. The words used are different, but the meaning and legal effect is the same. We think the appellant's contention as to the character of the transaction might be rested entirely upon the records of the city and that those records negative the theory of payment. Therefore, whether payments voluntarily or involuntarily made under a mistake of law, or made under duress, may or may not be recovered back is not before us, and will not be considered.

The next question is as to the validity of the ordinance.

The Act of March 12, 1874, Chapter 104 R. S., in relation to oil inspectors, so far as it is material to be considered here, is in substance as follows:

Sec. 1. "The * * * mayor of any city with the approval of the city council * * * shall on the petition of any five inhabitants thereof, appoint one or more oil inspectors for the inspection of coal oil, naphtha, gasoline, benzine and other mineral oils or fluids the product of petroleum, and fix their compensation, to be paid by the party requiring their services, and such inspector shall hold his office for one year and until his successor is appointed and qualified, unless sooner removed from office."

Sec. 2. "Every inspector before entering upon the duties of his office shall take and subscribe the following oath: (giving the form of the oath.)

He shall also execute a bond payable to the people of the state, and in such sum as shall be required by the city council, with one or more sureties to be approved by the mayor."

Section 3 provides that such oil inspector shall provide himself with testing instruments at his own expense.

This statute is the only authority for the creation of the office and the appointment of oil inspectors. We have not been referred to any other legislative enactment upon the subject.

The ordinance set out in the record and known as sections 1353 to 1364 inclusive of the "Revised Code of Chicago" provides for a two years' term of office, and that the inspector of oils shall receive as and for his salary and in full compensation for the discharge of all the duties of said office and in lieu of all fees and emoluments pertaining thereto, the sum of $300 per month, payable at the end of each month, in like manner as the salaries of other city officers. It authorizes him to appoint subject to the approval of the mayor not exceeding three deputies, and provides for their salaries.

Section 1354 provides that the mayor shall appoint the inspector with the advice and consent of the city council.

Section 1356 requires the inspector before entering upon the duties of his office to execute a bond payable to the city of Chicago in the sum of $10,000 with such sureties as the city council shall approve, conditioned for the faithful discharge of the duties of his office.

Section 1358 provides that he shall require each person, firm or corporation for whom he performs any official service to pay in cash for such service at the rate of six cents for inspecting each package, cask or barrel, and specifies the records he shall keep. It requires that the necessary expenses of the office, other than the salaries of the inspector and his deputies, and the cost and maintenance of the necessary instruments and apparatus, shall be paid by

the city comptroller monthly upon a statement verified by the affidavit of the inspector.

Section 1359 requires the inspector to make to the comptroller on or before the tenth day of each month a report in writing verified by his affidavit, showing in detail all the fees and charges collected by him by virtue of his office during the preceding month, and at the same time to pay to the city treasurer the full amount of all of such fees and charges so collected by him. It also provides that a failure of the inspector to so report and pay over shall be considered a resignation of such officer, and the mayor may declare a vacancy and appoint a successor.

The mere statement of the provisions of the statute and the ordinance is sufficient to show that several provisions of the ordinance are in conflict with the statute upon the same subject. The provision of the ordinance regarding the compensation of the oil inspector is in direct conflict with the provision of the statute, the ordinance substituting a salary to be paid monthly in like manner as the salaries of other city officers, and requiring the inspector to report and turn over all fees and charges collected by him to the city treasurer, while the statute requires his compensation to be paid by the party requiring his services.

The ordinance names the salary, while the statute requires the mayor to fix the compensation in making the appointment each and every time an appointment is made.

The ordinance provides for a term of two years, contrary to the statute which limits the official term to one year.

The ordinance requires the official bond to be given to the city of Chicago, while the statute says it shall be given to the People of the State. The ordinance requires the condition of the official bond to provide for turning over the fees and charges of his office in accordance with the duties prescribed in the ordinance. The statutory condition of the bond is for the faithful discharge of the duties of his office as defined by the statute.

There are other points of conflict between the statute

and the ordinance, but for the purposes of this case it is not material to mention them.

In so far as the ordinance is in material conflict with the statute on the same subject it is void. Wilkie v. City of Chicago, 188 Ill. 452; Ill. Cent. Ry. v. Bloomington, 76 id. 447; Emmons v. City of Lewiston, 132 id. 380; City v. Collins, 175 id. 445.

It is urged, however, by counsel for appellees that support for the ordinance is to be found in sections 2, 3, 4 and 15 of article VI of the City and Village Act. This contention, we think, cannot be regarded as sound. The sections named provide in a general way for the election and appointment of officers not named in the statute, and whose duties are not prescribed therein. As to such officers and their duties within certain defined limits and for municipal purposes the sections indicated doubtless give authority to municipalities to create the office and elect or appoint the officer. But where an office is created by statute, and the duties of the officer are defined by the statute, as in the case of oil inspector, and the source and method of his compensation are prescribed therein, a municipality possesses no power or authority under the above sections of the City and Village Act to legislate upon the same subject, in violation of the provisions of the statute. Statutory enactments cannot be nullified in that manner.

We are compelled to hold that the portions of the ordinance of the city of Chicago which are in material conflict with the statute are void; and specifically that those parts of the ordinance which purport to take from the inspector the fees or compensation for the services rendered and paid for by the persons requiring the services of the inspector and require that officer to turn such fees and compensation over to the city are void. It follows as a necessary result that the city of Chicago has no right or title to the fees or compensation paid to appellant but not paid or turned over by him to the city treasurer. And this, we think, answers the contention on behalf of appellees that appellant has no standing in court to reclaim his pledge, unless he shows

a tender of the amount of the debt secured thereby. There was no debt due to the city, as we have seen, and therefore there was nothing for him to tender to the city, unless it was created by the implied agreement of Burke when he accepted the office, or afterwards when he pledged the fund as security for the fees of the office received and collected by him, but not reported and paid into the city treasury. This question we will now consider.

It is not contended that there was an expressed agreement, parol or written, between the city of Chicago and appellant at any time that appellant Burke, in consideration of his appointment to the office of oil inspector and the salary to be paid by the city, would turn over to the city all the fees of the office. Certain it is that what transpired between Burke and McGann at the time the deposit was made cannot be construed into any such agreement. Will the law then raise an implied agreement from the course of business and the acts of the parties to that effect? If the law does not recognize such an agreement as legal when it is made specifically by an officer, it will not raise or create by implication such an agreement, for that would be nonsensical.

Mechem in his treatise on the law of Public Offices and Officers, in discussing the subject of contracts respecting the emoluments of public officers, says at paragraph 377:

"So it is held that a contract to accept less than the compensation prescribed by law is opposed to public policy and void. 'If by contract', says the Supreme Court of Iowa, 'he may take less, why may not the parties contract for an enlarged compensation? We think a contract whereby an officer agrees to accept a less or greater compensation than is prescribed by statute * * * is contrary to public policy and void.'"

The learned author cites in support of his text Gilman v. Des Moines V. Ry. Co., 40 Ia. 200; McConkey v. Chapman, 58 id. 281; Boardman v. Thompson, 25 id. 487; Adye v. Hanna, 47 id. 264. To these authorities may be added U. S. v. Lawson, 101 U. S. 164; People ex rel. v. Board of

Burke v. City of Chicago.

Police, 75 N. Y. 38; Corporation of Dublin v. Hayes, 10 Irish Rep. C. L. 226; Liverpool v. Wright, 28 L. J. Ch. 868, and many other cases holding the invalidity of such contracts. Under the authorities we must hold that such an agreement between appellant and the city regarding the fees of oil inspector could not be made legally.

All that the statute delegated to the mayor and council of the city was the appointing of the person to fill the statutory office, the fixing of the oil inspector's compensation, and the fixing of the amount of his bond to the people and the approving of the bond. The mayor and council appointed Burke and fixed his compensation at six cents per package inspected. But they went further and transcended their powers by requiring Burke to give a bond to the city instead of to the People of the State, and made the term two years instead of one, and undertook to take away his compensation under the statute. Whether he was a *de jure* officer or a *de facto* officer under the facts and issues in this record is in our opinion immaterial. If he was merely a *de facto* officer his acts were valid.

Appellant is not seeking in this cause to recover any salary from the city, or any part of the compensation for services collected by him from the oil owners, and afterwards paid to the city. He is seeking to recover the $30,000 which he placed in the possession of the city as a pledge for a specified purpose under conditions which were never fulfilled, and cannot legally be fulfilled, as we have seen. As between Burke and the city of Chicago the title to the fund never passed to the city, but remained in Burke. Union Trust Co. v. Rigdon, 93 Ill. 458; Travers v. Leopold, 124 id. 431; Woodhouse v. Crandall, Receiver, 197 id. 104.

It is contended by appellees that where a debt is illegal because created by a contract which is against public policy and property is subsequently pledged to secure the debt, the illegality of the debt enters into the contract of pledge, and the court will leave the property where it finds it, with

the pledgee.   The right to restoration it is claimed is defeated by the doctrine of *pari delicto*.

The first part of this contention is sound, but we cannot agree with the conclusion.   Where public policy is considered as advanced by allowing either of the parties *in pari delicto* to sue for relief against the transaction, then relief is given.   This is regarded as a limitation on the general doctrine.   Pomeroy in his Equity Jurisprudence, Vol. 2, par. 941, says:  "In compliance with the demands of a high public policy, equity may aid a party equally guilty with his opponent, not only in canceling and ordering the surrender of an executory agreement, but even by setting aside an executed contract, conveyance, or transfer, and decreeing the recovery back of money paid or property delivered in performance of the agreement.   The cases in which this limitation may apply and the affirmative relief may thus be granted, include the class of contracts which are intrinsically contrary to public policy—contracts in which the illegality itself consists in their opposition to public policy, and any other species of illegal contracts, in which, from their peculiar circumstances, incidental and collateral motives of public policy require relief."

In Congress Spring. Co. v. Knowlton, 103 U. S. 49, the court holds, quoting from 2 Comyns on Contracts, 361, as fairly stating the result of the authorities on this proposition as follows:  "Where money has been paid upon an illegal contract, it is a general rule that if the contract be executed and both parties are *in pari delicto*, neither of them can recover from the other the money so paid, but if the contract continues executory and the party paying the money be desirous of rescinding it, he may do so and recover back by action of *indebitatus assumpsit* for money had and received.   And this distinction is taken in the books that where the action is in affirmance of an illegal contract, the object of which is to enforce the performance of an engagement prohibited by law, clearly such an action can in no case be maintained, but where the action proceeds in disaffirmance of such contract, and, instead of endeavor-

ing to enforce it, presumes it to be void and seeks to prevent the defendant from retaining the benefit which he derived from an unlawful act, then it is consonant to the spirit and policy of the law that plaintiff should recover."

In 2 Parsons on Contracts at p. 746, the author says: "We should add here, that as all contracts which provide that anything shall be done which is distinctly prohibited by law, or morality, or public policy, are void; so he who advances money in consideration of a promise or undertaking to do such a thing, may, at any time before it is done, rescind the contract, and prevent the thing from being done, and recover back his money."

In Johnson v. Cooper et al., 2 Yerger (Tenn.) 524, it is said after an exhaustive review of the authorities on this proposition: " I therefore conclude on this part of the case, that the authorities sufficiently establish the principle, that being a *particeps criminis* is not an available objection against him who asks relief against the effect of a contract made in contravention of the policy of a public statute." The court also held: " Such relief will always be in aid, not in subversion of, public policy; the court interferes for the sake, not of the party, but of the public."

Lord Hardwicke in deciding Gilbert v. Chudleigh, 2 Hovenden's supplement to Ves. Jr. Reports, 122, said: "But the truth is that in these cases of violations of public policy, it is indifferent who stands before the court, if the intention of the contract be evident, because the court does not regard the state and condition of the parties so much as the nature of the contract and the public good."

To the same effect are Cox v. Donnelly et al., 34 Ark. 762; Wassermann v. Sloss, 117 Calif. 425; Green v. Seymour, 3 Sandf. Ch. R. 285; and Leavitt v. Palmer, 3 Comst. 19.

It is conceded that the fund of $30,000 deposited by appellant has been held by the city of Chicago in accordance with the conditions of the deposit and that no application of it has been made in any way. The transaction therefore remains executory. Under the authorities cited it may be

repudiated by appellant, and the money recovered. The decree denied him this relief and is therefore erroneous.

The decree is reversed and the cause is remanded with directions to enter a decree in accordance with the views here expressed.

*Reversed and remanded with directions.*

MR. JUSTICE BAKER dissenting.

That the checks in question were not delivered by appellant to the city comptroller in payment of an amount agreed upon between them as being due from appellant to the city of Chicago, is clear. The comptroller therefore properly, when he indorsed the checks and delivered them to the city treasurer, did not so deliver them as checks received in payment of an indebtedness to the city, and the city treasurer and his successors in office properly treated the money received on said checks, not as money belonging to the city, but as a special fund or trust fund deposited with the city for a special purpose. That purpose was to cover, to make good, to secure the payment by appellant of any difference, any deficiency, between the amount of the fees actually received by him as oil inspector and the amount he had reported to the comptroller that he had received and paid over to the city treasurer. If the checks had been deposited to cover, to make good, to secure the payment of any sum for which it should be determined that appellant was in law liable to the city, a different question would be presented. In making and accepting the deposit, both appellant and the comptroller acted under the belief that the ordinance creating the office of oil inspector was valid. If the ordinance had been valid in law, if the fees received by appellant as oil inspector had belonged to the city, and the amount of such fees withheld by the appellant had been wrongfully withheld, clearly the city might use so much of the fund so deposited as was necessary to cover, to make good, to pay such deficiency, and under the stipulation that the amount of such difference or deficiency exceeds the amount so de-

posited, might use and apply the entire amount so deposited upon such deficiency.

It now appears that both appellant and the city comptroller acted under a mistake of law; that the ordinance was invalid; that the fees collected by appellant as oil inspector belonged to him and not to the city, and that he was not bound to pay the same over to the city.

But the checks were delivered by appellant to the city comptroller under the belief that the fees he had collected in law belonged to the city, and that he was in law bound to pay all of the fees he had received to the city. The transaction in question was not strictly a voluntary payment of money under a mistake of law, but it was a voluntary deposit of money to cover a specific deficiency which in fact existed, made under the mistaken belief on the part of appellant that he was in law liable to make good and pay such deficiency to the city, and the transaction, in my opinion, so far partakes of the nature of a payment that the rule of law that prevents the recovery of money voluntarily paid under mistake of law should be held to apply to the transaction, and for that reason the bill was properly dismissed.