The BUSINESS BANK, Appellant,

v.

Kevin HANSON, et al., Respondents,

Option One Mortgage Corporation, Respondent,

The United States of America, Defendant.

No. A07–1832.

Supreme Court of Minnesota.

July 30, 2009.

Rehearing Denied Sept. 9, 2009.[†]

† Meyer and Dietzen, JJ., took no part in the consideration or decision of this case.

Barbara M. Ross, Edward P. Sheu, Best & Flanagan, LLP, Minneapolis, MN, for appellant.

Scott A. Johnson, Todd M. Johnson, Johnson Law Group, LLP, Minnetonka, MN, for respondents Kevin Hanson, et al.

Jonathan M. Bye, Karla M. Vehrs, Lindquist & Vennum, PLLP, Minneapolis, MN, for respondent Option One Mortgage Corporation.

John M. Koneck, Patrick D.J. Mahlberg, Joseph J. Cassioppi, Fredrikson & Byron, P.A., Minneapolis, MN, for amicus curiae Minnesota State Bar Association Real Property Law Section.

## O P I N I O N

GILDEA, Justice.

The question presented in this case is whether a mortgage in favor of appellant The Business Bank ("Business Bank") complies with Minnesota's Mortgage Registry Tax statute, Minn.Stat. §§ 287.01–.13 (2008). The district court found that the mortgage was valid and ruled that the mortgage had priority over another later-filed lien. The court of appeals reversed, holding that the mortgage was invalid because it did not comply with Minn.Stat. § 287.03 (2008).[1] *Business Bank v. Hanson*, No. A07–1832, 2008 WL 4705172, at *8–10 (Minn.App. Oct.28, 2008). Because we conclude that the mortgage complies with the statute, we reverse.

This action arises from a joint venture entered into in 2004 between Kevin Hanson and Travis Carter. Hanson and Carter formed North American Pet Distributors, Inc. ("NAPD") to purchase the assets of an existing exotic fish wholesaler, U.S. Pet Headquarters, Inc. Jesse Yap owned U.S. Pet and was indebted to Business Bank for a loan in the amount of $111,925.17 ("Yap Note"). On February 5, 2004, to facilitate NAPD's purchase of U.S. Pet's assets, Business Bank loaned NAPD $250,000 on a term note to be repaid in 90 days. Hanson and Carter personally guaranteed the $250,000 loan. NAPD purchased U.S. Pet solely from the loan proceeds.

Unable to obtain additional financing from other sources, Hanson and Carter approached Business Bank in August of 2004 for additional funding as well as an extension on the $250,000 loan. On August 17, 2004, Business Bank loaned Hanson and Carter $50,000 in a term note and $100,000 in a revolving note. Business Bank also extended the term on the $250,000 loan in an amended and restated loan agreement.[2]

In return for these loans, Business Bank required additional guaranties from Hanson and Carter. Hanson executed an

---

1. Minn.Stat. § 287.03 provides, "No instrument ... relating to real estate shall be valid as security for any debt, unless the fact that it is intended and the initial known amount of the debt are expressed in it."

2. The Yap Note, term notes, and revolving note are herein referenced together as the "Notes."

amended and restated guaranty covering both the $400,000 in loans to NAPD and the $111,925.17 owed on the Yap Note. Hanson also executed a third party mortgage on his house in favor of Business Bank in the amount of $200,000. Carter executed a similar mortgage on his home in the same amount. Business Bank recorded both mortgages in Hennepin County on August 31, 2004.

As payments in full became due in September of 2005, Hanson and Carter were not able to meet their obligations. Accordingly, Hanson and Carter negotiated a loan modification agreement with Business Bank to extend the time for their repayment in exchange for an additional $15,000 of debt. The modification agreement was recorded on December 23, 2005, as an amendment to the original mortgages.

In October of 2005, Hanson sought to refinance his home, which was encumbered by an $880,000 lien in favor of Chase Bank in addition to Business Bank's lien. On October 31, 2005, Hanson executed a $1.17 million mortgage on his home in favor of Option One. Option One recorded its mortgage on December 9, 2005. Option One's title search apparently did not discover Business Bank's previously recorded mortgage on Hanson's property.[3]

In 2006, NAPD ceased operations and liquidated. Hanson and Carter defaulted on their obligations, and their relationship broke down. Thereafter, Carter entered a forbearance agreement with Business Bank, paying half of his obligation in ex-change for Business Bank's promise to satisfy Hanson's obligations before the bank further pursued Carter. Pursuant to the forbearance agreement, Carter paid Business Bank $219,051.62, which satisfied the $250,000 term note. The record does not show that Hanson made any payment toward the Notes.

Business Bank commenced this action seeking to foreclose on the mortgage it held on Hanson's home and for other damages. Business Bank alleges in its complaint that Hanson is in default on the Notes, the guaranty, and the mortgage. Business Bank joined Option One as a party in order to assert priority of its mortgage over the lien held by Option One.[4]

Business Bank moved for summary judgment on its claims against Hanson and on the claims Hanson brought against it. Business Bank also sought summary judgment against Option One, asking the district court to declare the priority of its mortgage over Option One's mortgage. For its part, Option One simultaneously moved for summary judgment, arguing that its mortgage had priority because Business Bank's mortgage was invalid. Specifically, Option One argued that the mortgage in favor of Business Bank is invalid because it does not state the amount that the mortgage secures, as required by Minn.Stat. § 287.03.

The district court granted Business Bank's motions with respect to both Hanson and Option One, and denied Option

---

3. Hanson did not list his liabilities to Business Bank on the Option One mortgage application. Hanson contended that, before he approached Option One, he had made an oral agreement with Business Bank that released him from all his personal obligations while he refinanced his home, and that any other liability was corporate. Based on this agreement, Hanson contended that he did not need to disclose his obligations to Business Bank when he applied for refinancing with Option One.

4. Hanson had separately sued Business Bank and Carter. Hanson alleged fraudulent inducement and "wrongful increase of the risk" on Business Bank's loans. The district court consolidated these claims with Business Bank's action.

One's motion. Based on its findings, the district court concluded that Business Bank's mortgage had priority over Option One's mortgage, ordered foreclosure of Business Bank's mortgage, and entered a money judgment in favor of Business Bank.

On appeal, the court of appeals concluded, inter alia, that Business Bank's mortgage is invalid under Minn.Stat. § 287.03, and that material issues of fact remained about Option One's actual knowledge of the debt owed by Hanson to Business Bank. The court therefore reversed and remanded to the district court. We granted Business Bank's petition for review.[5]

### I.

■ In its summary judgment ruling, the district court rejected Option One's argument that Business Bank's mortgage is invalid under Minn.Stat. § 287.03. We review the district court's summary judgment rulings to determine 1) if any issues of material fact exist and 2) if the district court misapplied the law to the facts. *Fin Ag, Inc. v. Hufnagle, Inc.*, 720 N.W.2d 579, 584 (Minn.2006). The facts are construed in the light most favorable to the party against whom the court entered judgment (here, in the light most favorable to Option One), but we review questions of law de novo. *Id.*

■ The construction of a contract, such as the mortgage at issue here, is a question of law. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn.1998). When reading a mortgage, as with any contract, we must give effect to all language in the instrument. *Metro. Airports Comm'n v. Noble*, 763 N.W.2d 639, 645 (Minn.2009); *see also Ro-*

*manchuk v. Plotkin*, 215 Minn. 156, 164, 9 N.W.2d 421, 426 (1943) (noting that the same rules of construction apply to statutes, contracts, deeds, and mortgages). The plain and ordinary meaning of the contract language controls, unless the language is ambiguous. *Metro. Airports Comm'n*, 763 N.W.2d at 645. Language is ambiguous if it is subject to more than one reasonable interpretation. *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn.1995).

■ The construction of a statute is also a question of law subject to de novo review. *State v. Wiltgen*, 737 N.W.2d 561, 570 (Minn.2007). The parties focus their arguments on one provision in the Mortgage Registry Tax statute-section 287.03. Under Minn.Stat. § 287.03, "No instrument ... relating to real estate shall be valid as security for any debt, unless the fact that it is intended and the initial known amount of the debt are expressed in it." The parties dispute whether Business Bank's mortgage states the "initial known amount of the debt" as required under Minn.Stat. § 287.03. Business Bank argues that its mortgage is valid under section 287.03 because it states the amount of debt secured by real property, $200,000. Option One argues that the mortgage does not state the amount of debt the instrument secures because the mortgage actually secures the entire $511,925 of Hanson's obligations to Business Bank, or the full amount of all of the Notes, and that the mortgage nowhere states this specific amount.

The definition of "debt" in the Mortgage Registry Tax statute does not appear to be limited to secured debt. "Debt" is defined

---

**5.** Hanson also appealed the judgments against him to the court of appeals. The court affirmed the dismissal of Hanson's "increased risk" claim, but reinstated Hanson's fraud claim. *Business Bank*, 2008 WL 4705172, at *7. The parties do not raise issues about these claims in this appeal.

as "the principal amount of an obligation to pay money that is secured in whole or in part by a mortgage of an interest in real property." Minn.Stat. § 287.01, subd. 3 (2008). The court of appeals interpreted this definition to mean that the entire amount of Hanson's debt to the bank-all of the money owed under the Notes-had to be listed in the mortgage. *Business Bank,* 2008 WL 4705172, at *8. But the purpose of the Mortgage Registry Tax statute is the collection of a mortgage registration tax on debt to the extent that the debt is secured by a mortgage. Minn.Stat. § 287.035 (2008) ("A tax is imposed on the privilege of recording a mortgage. The tax rate is .0023 of the debt or portion of the debt that is secured by any recorded mortgage of real property located in this state."). Accordingly, it is not apparent from the statute why unsecured debt, which is not subject to taxation, must also be listed in the mortgage under section 287.03.

But in this case we do need not to resolve how the broad definition of "debt" in section 287.01 operates in the context of section 287.03. We must construe the Mortgage Registry Tax statute to give effect to all of its provisions. Minn.Stat. § 645.17(2) (2008). In addition to the definition of debt in section 287.01 and the provision on which the parties focus, section 287.03, the statute also provides that when a mortgage is intended to secure only a portion of a debt amount recited or referred to in the mortgage, the mortgage may state on the first page of the mortgage that "[n]otwithstanding anything to the contrary herein, enforcement of this mortgage is limited to a debt amount of $ . . . . . . . under chapter 287 of Minnesota Statutes." Minn.Stat. § 287.05 subd. 1a(a) (2008). When the first page of the mort-

gage includes such a statement, section 287.05, subd. 1a(a), provides that "the effect of the mortgage . . . as notice for any purpose in this state, shall be limited to the amount contained in the statement." This provision is dispositive of the question of the validity of Business Bank's mortgage under the Mortgage Registry Tax statute.

Business Bank's mortgage recites that there is a loan agreement between Hanson and the bank and that as a condition precedent to entering into the loan agreement, the bank has required that Hanson secure repayment of certain notes payable by the mortgage. The mortgage further recites: "in consideration of the Mortgagee making a loan to the Borrower, . . . and to secure, and as security for, the payment of up to $200,000 (the "Mortgage Amount") of principal and interest and other premiums, penalties and charges on the Notes . . . the Mortgagor does hereby grant . . . a mortgage lien. . . ." The mortgage thus recites that it secures up to $200,000 of the amount owed to the bank under the Notes. The mortgage also incorporates, on the first page and in all capital letters, the legend permitted by section 287.05, subd. 1a(a): "Notwithstanding anything to the contrary herein, the maximum principal amount of the indebtedness secured by this mortgage is $200,000." [6] The mortgage thus discloses that it is intended to secure only a portion of a debt amount referred to in the mortgage, as permitted by section 287.05, subd. 1a, and the effect of the mortgage is limited to no more than $200,000, the amount stated on the first page.

Despite this plain language, Option One argues the mortgage actually secures the entirety of Hanson's debt—$511,925—because the mortgage provides that it re-

---

**6.** The court of appeals reached its conclusion that the mortgage did not set forth the amount of the debt without discussing this language from the first page of the mortgage.

mains in effect until Hanson satisfies all of the debts reflected in the Notes. The mortgage states that it secures the Notes: "[T]he Mortgagee has required as a condition precedent to entering into the Loan Agreement that the Mortgagor secure repayment of the Notes by this Mortgage." The mortgage also provides that the Notes must be satisfied before the property will be released from the lien: "[I]f the Borrower or the Mortgagor shall pay the principal balance of the Notes in full, plus interest ... and any other sums due and owing under the Notes and the Loan Agreement ... then this Mortgage shall be null and void." But these provisions do not change the amount that is pledged by the mortgage as security for Hanson's debt.

Our jurisprudence recognizes that the amount owed on a note and the amount secured by a mortgage may be different. *Winne v. Lahart*, 155 Minn. 307, 309–10, 193 N.W. 587, 588, 588–89 (1923) (discussing "the doctrine that the note and the mortgage are separate and distinct instruments"); *Kingsley v. Anderson*, 103 Minn. 510, 511, 115 N.W. 642, 643 (1908) ("[A] mortgage securing a note stated to be for a definite sum, when in fact the note is for a larger sum, is security only for the smaller sum stated in the mortgage."). In other words, that Hanson owes Business Bank more than $200,000, and that the bank may be able to hold the mortgage until the last dollar of those debts is paid, does not mean that more than $200,000 of Hanson's debt is secured by the mortgage. Nor does it mean that Business Bank could collect more than $200,000 by foreclosing its mortgage.[7]

The mortgage provisions on which Option One relies also do not create ambiguity in the amount of debt secured by the mortgage. This is true because of the clear statement on the first page of the mortgage that notwithstanding anything else to the contrary, "the maximum principal amount of the indebtedness secured by this mortgage is $200,000." Option One's argument would require us to read this provision out of the mortgage. But we are not free to do so. We must instead read the mortgage to give effect to all of its provisions. *Metro. Airports Comm'n*, 763 N.W.2d at 645. Under the plain language of the mortgage, the amount of Hanson's debt that is secured by the mortgage is limited to no more than $200,000.

Because the mortgage in this case disclosed that it was intended to secure only a portion of the debt amount referred to in the mortgage, the mortgage complies with the Mortgage Registry Tax statute. We therefore hold that the district court properly granted summary judgment in favor of Business Bank on the issue of priority.[8]

Reversed.

Took no part, MEYER and DIETZEN, JJ.

---

7. Option One also argues that if only $200,000 was secured by the mortgage, the mortgage has been satisfied because Business Bank has been paid more than $200,000. But this argument relates to the timing of the satisfaction of the mortgage, not to the question before us of whether the mortgage is valid under the Mortgage Registry Tax statute.

8. Our conclusion that the mortgage complies with the statute makes it unnecessary for us to address the question of whether a mortgage that does not comply is invalid as a matter of law.