*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0977**

Construction Services, Inc. of Duluth,
Appellant,

vs.

Town of Alborn,
Respondent.

**Filed April 27, 2015
Affirmed
Reyes, Judge**

St. Louis County District Court
File No. 69DUCV132351

William D. Paul, William Paul Law Office, Duluth, Minnesota (for appellant)

Daniel R. Gregerson, Margaret L. Evavold, Gregerson, Rosow, Johnson & Nilan, Ltd., Minneapolis, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Bjorkman, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant Construction Services, Inc. of Duluth challenges a district court's summary judgment in favor of respondent Town of Alborn. Appellant seeks to collect funds it claims it is entitled to under the parties' construction contract arguing that (1) it did not materially breach the parties' contract; (2) respondent breached the contract by

failing to timely pay a draw request; and (3) respondent failed to follow the contract's termination procedure. We affirm.

**FACTS**

On April 30, 2008, the parties entered into a contract for the construction of a wastewater-treatment facility. The contract price for the project was $509,610. Pursuant to Minnesota law and article 5 of the contract, appellant entered into an indemnity agreement (indemnity agreement) with performance and payment bonds from a surety (performance bond), North American Specialty Insurance Company (NAS). *See* Minn. Stat. § 574.26, subd. 2 (2014) (requiring contractors to obtain performance and payment bonds for public-works projects). Appellant agreed to indemnify NAS for any losses NAS might suffer as a result of issuing bonds for appellant.

The contract originally called for work to be substantially completed by November 30, 2008. However, unexpected weather conditions caused delays, and the parties mutually agreed to extend the substantial completion date to June 30, 2009.

On June 9, 2009, the project's engineer, Ayres Associates (Ayres), informed appellant that appellant was unlikely to achieve substantial progress by the June 30 deadline. Ayres did not issue a certificate of substantial completion until July 15, 2009. Attached to the certificate was a punch list of 265 items that, by the terms of the contract, were required to be fixed or completed by appellant within 30 days. They were not completed on time. On August 15, 2009, respondent's town board, along with Ayres, met with appellant to discuss outstanding punch-list items and a possible date for the

2

project's final completion. Appellant could not provide a final completion date at that time.

On August 26, 2009, appellant submitted an application for the project's sixth progress payment in the amount of $151,001. The terms of the contract require appellant to submit an application for payment to Ayres to receive a progress payment. Ayres would then review the application and either make a written recommendation for payment to respondent, or return the application to appellant with reasons why it was refusing to recommend payment. If a payment application was returned, appellant was to correct and resubmit the application. Payment would then be due 20 days after respondent received a payment application with Ayres's recommendation.

On September 10, 2009, respondent sent a letter to NAS and appellant notifying them that it was considering declaring appellant to be in default after its failure to timely complete its work.

On September 15, 2009, Ayres sent a memorandum to appellant informing them that the amount approved on their August 26 application for the sixth progress payment was reduced to $117,253. Ayres sent a follow-up memorandum on September 18, 2009, which further reduced the approved payment price to $105,121.49. Appellant did not resubmit a payment application and was unresponsive to Ayres's letters.

In accordance with the performance bond, the parties held a conference on September 18, 2009. At that time, appellant agreed to complete the remaining punch-list items within one week of September 21, 2009. On October 2, 2009, the punch-list items were still incomplete and respondent sent another letter to appellant proposing that they

3

would not declare appellant to be in default if appellant agreed to pay for the additional engineering and legal fees incurred as a result of the delay. In addition to the delay, appellant failed to pay its subcontractors, resulting in mechanic's liens on the property, and appellant failed to complete closeout and warranty work as required by the contract. Finally, on July 13, 2010, after a number of subsequent communications, conferences, and failed mediation sessions, respondent terminated the contract pursuant to the terms of the indemnity agreement. Following the termination procedures of the performance bond, respondent notified appellant and NAS that it was declaring appellant to be in default.

NAS filed suit against appellant to recoup losses that it incurred as a result of acting as a surety for appellant and, in July 2011, was awarded default judgment against appellant for $69,241.17. In September 2011, NAS sought to recover from respondent any remaining contract funds due to appellant as a secured creditor pursuant to the indemnity agreement. In March 2012, respondent paid NAS $4,928.37 in net contract funds in accordance with NAS's assertion of its right under the indemnity agreement. In September 2013, appellant filed this lawsuit against respondent seeking to recover funds it believes it was owed under the contract.[1] Both parties filed motions for summary judgment, and a motion hearing took place on March 11, 2014. The district court denied appellant's summary judgment motion, granted respondent's motion, and summary

---

[1] Appellant asserted four causes of action: (1) breach of contract; (2) unjust enrichment; (3) quantum merit; and (4) failure to promptly pay. On appeal, appellant only argues that it was entitled to summary judgment on its breach-of-contract theory and has accordingly waived its other claims. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that issues not briefed on appeal are waived).

4

judgment was entered. The district court concluded that appellant's assignment of its rights to NAS barred the relief it sought from respondent. This appeal follows.

## D E C I S I O N

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 61 (Minn. 2014); *see also* Minn. R. Civ. P. 56.03. "No genuine issue of material fact exists when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008) (quotations omitted). A district court's grant of summary judgment is reviewed de novo. *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014).

The district court concluded that summary judgment in favor of respondent was appropriate because appellant had assigned any right to recovery to NAS in the event of default. To determine whether the award of summary judgment was made in error, we must decide if there is a genuine issue of material fact as to whether appellant defaulted on the contract such that appellant's indemnity agreement with NAS was triggered. "The plain and ordinary meaning of the contract language controls, unless the language is ambiguous." *Bus. Bank v. Hanson*, 769 N.W.2d 285, 288 (Minn. 2009). The indemnity agreement between appellant and NAS provides that appellant agrees to

> assign, transfer, pledge and convey to [NAS] (effective as of the date of each such bond, *but only in the event of default, breach or failure* as referred to in preceding Section 4(c))

5

. . . all of their rights under the contracts referred to in such bonds, including their right, title and interest in and to . . . (c) any and all sums due or which may thereafter become due under such contracts, and all sums due or to become due on all other contracts, bonded or unbonded, in which any or all of the Indemnitors have an interest.

(Emphasis added). Section 4(c), as referenced above, states in relevant part:

> If any such bond be given in connection with a contract, [NAS] in its sole discretion is hereby authorized, but not required . . . *in the event of any breach or default in the performance of the contract*, or the breach of this Agreement or of any bond connected therewith, or *the failure to diligently prosecute the work under any contract, or to pay for labor and materials used in the prosecution of the contract* . . . to take possession of the work under the contract, and, at the expense of the Indemnitors, to complete the contract or cause the same to be completed or to consent to the completion thereof.

(Emphasis added). Neither party claims the language of the indemnity agreement is ambiguous. Accordingly, by the "plain and ordinary meaning of the contract language," *Hanson*, 769 N.W.2d at 288, appellant's rights will be assigned "only in the event of default, breach or failure" in the performance of the contract.

The district court stated that the terms of the indemnity agreement make clear that "*if* [appellant] defaults on any of its bonded contracts *then* NAS assumes all [appellant's] rights and interest under that contract, even money due and owing to [appellant]." (Emphasis added). The district court further stated that "[e]ven though [respondent] gratuitously provided [appellant] with numerous extensions to complete the contracted work . . . , [appellant] still managed to default and as a result [respondent] terminated the contract." Thus, it appears the district court concluded that there was no genuine issue of

6

material fact with regard to appellant's default. Appellant argues that this determination was made in error.

## I.    Appellant's breach

"The moving party has the burden of showing an absence of factual issues before summary judgment can be granted." *Anderson v. State, Dep't of Natural Res.*, 693 N.W.2d 181, 191 (Minn. 2005). Respondent alleges that there is no factual issue with regard to appellant's breach because appellant continuously failed to timely complete its work and failed to timely pay for certain labor and material provided by subcontractors. The record substantiates these claims. Despite agreeing to reach substantial completion by June 30, 2009, appellant did not receive a certificate of substantial completion until 15 days later. Appellant then failed to complete the 265 items on the punch list within 30 days, as required by the contract. Moreover, in a letter dated March 19, 2009, respondent notified appellant that it learned that appellant failed to make payments to the project's subcontractors. Because "failure to diligently prosecute the work" and "failure . . . to pay for labor" are both specifically listed under section 4(c) of the indemnity agreement, respondent satisfied its burden as the moving party to show an absence of factual issues.

"[W]hen the moving party makes out a prima facie case, the burden of establishing that the facts raise a genuine issue falls to the opposing party." *Brown*, 849 N.W.2d at 62. "To defeat a summary judgment motion, the nonmoving party must do more than rest on averments or denials of the adverse party's pleadings." *Id.* at 61-62 (citing Minn. R. Civ. P. 56.05). "[T]he nonmoving party must present more than evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently

7

probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009) (quotation omitted). Here, appellant asserts that even if it *technically* breached the terms of the contract, it did not *materially* breach the contract because it received a certificate of substantial completion and finished 262 of the 265 required punch-list items. Appellant argues that the materiality of its breach is a fact issue precluding summary judgment.

We disagree. "A material breach is '[a] breach of contract that is significant enough to permit the aggrieved party to elect to treat the breach as total (rather than partial), thus excusing that party from further performance and affording it the right to sue for damages.'" *BOB Acres, LLC v. Schumacher Farms, LLC*, 797 N.W.2d 723, 728-29 (Minn. App. 2011) (citing *Black's Law Dictionary* 214 (9th ed. 2009)). A material breach "goes to the root or essence of the contract." 15 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 44:55 (4th ed. 2000). Even when viewed in the light most favorable to appellant, a review of the record reveals that appellant's breach was material. Appellant failed to substantially complete the project by the agreed-upon June 30 deadline. Although a certificate of substantial completion was eventually issued, it was issued after the June 30 deadline and appellant failed to complete all of the punch-list items within the required 30 days. Even after the parties extended the punch-list deadline, appellant again failed to finish the remaining items. Moreover, appellant did not pay its subcontractors, which resulted in mechanic's liens on the property, and appellant failed to complete closeout and warranty work which was required by the

8

contract. These uncontested facts show that appellant's breach was material and thus the provisions of the indemnity agreement were triggered. As such, the district court appropriately awarded summary judgment to respondent.

## II.    Respondent's breach

In granting respondent's motion for summary judgment, the district court simultaneously denied appellant's motion for summary judgment. Appellant argues that the district court erred in denying its motion because respondent breached the contract with respect to the proper payment and claims procedure. "The elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quotation omitted). Because the parties do not dispute that a contract was formed, our inquiry is limited to the second and third elements.

### A.    Breach via payment

Appellant first argues that respondent breached the contract by failing to timely pay the sixth progress payment. Appellant argues that it satisfied its conditions precedent sufficient to require payment. We are not persuaded. "A condition precedent is an event that must occur before a party is required to perform a certain contractual duty." *Minnwest Bank Cent. v. Flagship Prop. LLC*, 689 N.W.2d 295, 299 (Minn. App. 2004). As previously mentioned, the terms of the contract required appellant to submit payment applications to Ayres, who would then either (1) issue a recommendation for payment to respondent or (2) return the application to appellant with an explanation for its refusal.

9

Upon refusal, appellant could reapply. The terms of the contract dictate that payment was not due until respondent received a payment application with Ayres's recommendation that payment be delivered. Ayres twice reduced the amount approved on appellant's sixth progress payment application. Appellant failed to resubmit an application. Thus, appellant failed to perform a condition precedent and its summary judgment claim was properly denied.

### B. Breach via claims procedure

Appellant next argues that respondent breached when it adjusted the contract price without following the proper claims procedures. Under the contract, a party was required to submit a claim to Ayres if it sought to adjust the contract price. Submitting a claim required prompt written notice to the other party, who was then afforded the chance to respond. At that time, Ayres would issue a decision on the proposed claim.

Respondent admits that it did not follow this procedure when it did not pay the sixth progress payment in its entirety. Instead, respondent contends that it did not adjust the contract price at all, but rather set-off its additional expenses incurred as a result of appellant's deficient performance. We agree.

The contract differentiates between contract price and set-offs. Contract price is defined in terms of "work," which "includes and is the result of performing or providing all labor, services, and documentation necessary to produce such construction, and furnishing, installing, and incorporating all materials and equipment into such construction." Accordingly, contract price relates to the price for appellant's physical labor. This price, however, can be offset by costs respondent incurs as a result of

10

appellant's insufficient performance. For example, in outlining the procedure for progress payments upon substantial completion, the contract states that respondent will pay a percentage of the contract price "less such amounts as [Ayres] shall determine or [respondent] may withhold, for incomplete work." Because the contract makes this distinction, we agree that respondent did not make an adjustment to the contract price; rather, respondent offset the contract price against the additional expenses it accrued as a result of appellant's delay. Thus, the district court did not err in denying summary judgment on appellant's breach-of-contract claim.

## III.   Wrongful termination

Finally, appellant contends that the district court improperly denied its summary judgment motion because respondent did not follow the proper process for terminating the contract. The district court did not address the merits of appellant's wrongful-termination claim because it determined that it was not properly pleaded. We agree with the district court's determination.

"A pleading which sets forth a claim for relief . . . shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." Minn. R. Civ. P. 8.01. Minnesota is a notice-pleading state and "does not require absolute specificity in pleading, but rather requires only information sufficient to fairly notify the opposing party of the claim against it." *Donnelly Bros. Constr. Co. v. State Auto Prop. & Cas. Ins. Co.*, 759 N.W.2d 651, 660 (Minn. App. 2009).

Appellant served its original complaint on September 18, 2013, and its amended complaint on January 3, 2014. Neither explicitly asserted that respondent's termination

of the contract was wrongful. Instead, the complaints focused solely on the breach-of-contract claims previously discussed. And while appellant argues that a breach-of-contract claim incorporates and includes a wrongful-termination-of-contract claim, it provides no citation for this proposition. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519-20, 187 N.W.2d 133, 135 (1971) (declaring that argument based on "mere assertion and not supported by any argument or authorities . . . is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection"). Thus, we agree with the district court's determination that appellant is precluded from bringing a wrongful-termination claim when it was not properly pleaded.[2]

**Affirmed**.

---

[2] Even if such a claim was properly pleaded, we disagree with appellant's assertion that the termination of the contract was wrongful. Appellant contends that under paragraph 15.02.C of the contract, certain payment and review procedures must occur prior to termination. But paragraph 15.02.F reads: "If and to the extent that [appellant] has provided a performance bond . . . the termination procedures of that bond shall supersede the provisions of Paragraphs 15.02.B and 15.02.C." Thus, respondent was required to comply with the termination procedures of the performance bond issued by NAS under the indemnity agreement and not the procedures outlined in paragraph 15.02.C of the contract. A review of the record indicates that the termination procedures of the performance bond were properly followed. Therefore, even if appellant properly pleaded its wrongful-termination claim, the district court did not err in denying appellant's motion for summary judgment.