LEECO, INC., a Nebraska corporation,
Appellant,

v.

CORNERSTONE BANK, a Nebraska
corporation, Respondent.

A16-1875

Court of Appeals of Minnesota.

Filed July 3, 2017

Thomas C. Pearson, Daniel M. Hawley, Gammello, Qualley, Pearson & Mallak PLLC, Baxter, Minnesota (for appellant).

Aaron J. Glade, Joseph A. Gangi, Farrish Johnson Law Office, Chtd., Mankato, Minnesota (for respondent).

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Kirk, Judge.

## OPINION

JOHNSON, Judge

A bank foreclosed on a mortgage on lakeshore property after the property owner failed to satisfy a guaranty on a line of credit. The mortgagor challenged the foreclosure sale on two grounds. First, the mortgagor argued that the lakeshore property should have been sold as separate tracts in separate foreclosure sales because the property consists of multiple parcels for purposes of property taxes. Second, the mortgagor argued that the bank's notice of foreclosure sale misstated

the amount due on the mortgage. The district court rejected both of the mortgagor's arguments on cross-motions for summary judgment. We conclude that the district court was correct in its rulings. Therefore, we affirm.

## FACTS

In 2009, Cornerstone Bank provided financing to Jacob North Printing Company, Inc. The financing included a line of credit of as much as $1,200,000. Jacob North Printing's debt to Cornerstone Bank was guaranteed by Leeco, Inc. Leeco secured its guaranty by granting Cornerstone Bank a mortgage on real property.

The real property that secured Leeco's guaranty is on Pelican Lake in Crow Wing County. The property has 298 feet of lakeshore and a cabin. The property is composed of three lots. For purposes of property taxes, the property is divided into four parcels, each of which has a distinct tax-identification number. There are no markers or physical separations between the three lots or the four tax parcels. In fact, the cabin straddles a line separating two tax parcels. Only one of the tax parcels has lakeshore access. Three of the four tax parcels are too small by themselves to be separate, buildable lots in light of the applicable zoning ordinances.

Leeco's mortgage identifies the property that secured its guaranty as "Lots Five (5), Six (6), and Seven (7), First Addition to Weaver's Point and part of vacated Pelican Trail, Crow Wing County, Minnesota." The first paragraph of the mortgage, which is entitled "Maximum Lien," states, "Notwithstanding anything to the contrary herein, the maximum principal amount of the line of credit secured by this Mortgage at any one time is $1,200,000." The fifth paragraph, entitled "Revolving Line of Credit," states, "This Mortgage secures the Indebtedness including, with-

out limitation, a revolving line of credit ... up to a maximum principal amount of $1,200,000...." The fourth paragraph, which is entitled "Cross-Collateralization," states, "In addition to the Note, this Mortgage secures all obligations, debts and liabilities ... of either Grantor or Borrower to Lender ... whether now existing or hereafter arising...." A paragraph entitled "Sale of the Property" states, "In exercising its rights and remedies, [Cornerstone Bank] shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales."

In January 2013, Jacob North Printing filed a bankruptcy petition. Leeco defaulted on its guaranty of Jacob North Printing's debt to Cornerstone Bank. Cornerstone Bank commenced a foreclosure by advertisement on Leeco's lakeshore property. In January 2014, Cornerstone Bank issued a notice of foreclosure sale. Paragraph 12 of the notice states, "The original principal amount secured by the Mortgage was $1,200,000.00." Paragraph 13 of the notice states that, as of the date of the notice, "the amount due on the Mortgage, including taxes, if any, paid by the holder of the Mortgage, is $4,178,993.94."

In April 2014, Leeco filed a bankruptcy petition. Leeco disclosed to the bankruptcy court that it owed Cornerstone Bank $4,800,000. Leeco also disclosed that the value of its property on Pelican Lake was $650,000.

A foreclosure sale was held in June 2014. Leeco's counsel appeared at the sale and requested that the property be sold as separate tracts. The property was sold as one tract. Cornerstone Bank submitted the winning bid of $1,007,437.85.

In December 2014, Leeco commenced this action against Cornerstone Bank. In count 1 of its complaint, Leeco seeks an order voiding the foreclosure sale on the

ground that the property was wrongfully sold as one tract instead of separate tracts, in violation of section 580.08 of the Minnesota Statutes. In count 2, Leeco seeks an order setting aside the foreclosure sale on the ground that the notice of foreclosure sale misstated the amount due on the mortgage, in violation of section 580.04 of the Minnesota Statutes.

In May 2015, Leeco and Cornerstone Bank filed cross-motions for summary judgment. The district court granted Cornerstone Bank's motion and denied Leeco's motion. With respect to Leeco's first claim, the district court reasoned that Cornerstone Bank was not required to sell the property in separate foreclosure sales because the property does not consist of separate and distinct tracts. The district court also reasoned, in the alternative, that Leeco waived its statutory right to separate foreclosure sales by executing a mortgage stating that Cornerstone Bank "shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales." With respect to Leeco's second claim, the district court reasoned that Cornerstone Bank did not misstate the amount due on the mortgage. Leeco appeals.

## ISSUES

I. Does the mortgaged property consist of "separate and distinct tracts," as contemplated by section 580.08 of the Minnesota Statutes?

II. Did Cornerstone Bank comply with section 580.04(a)(3) of the Minnesota Statutes when stating the amount "due on the mortgage" in the notice of foreclosure sale?

## ANALYSIS

■ Leeco argues that the district court erred by granting Cornerstone Bank's motion for summary judgment. A district court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the nonmoving party. *Frieler v. Carlson Mktg. Grp.*, 751 N.W.2d 558, 564 (Minn. 2008). "[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). We apply a *de novo* standard of review to the district court's decision to grant summary judgment, viewing the evidence in the light most favorable to the non-moving party. *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008).

## I.

Leeco first argues that the district court erred by granting Cornerstone's summary-judgment motion with respect to count 1. Leeco contends on appeal that there is a genuine issue of material fact as to whether the property consists of separate and distinct tracts.

■ In a foreclosure by advertisement, "If the mortgaged premises consist of separate and distinct farms or tracts, they shall be sold separately, and no more farms or tracts shall be sold than are necessary to satisfy the amount due on such mortgage...." Minn. Stat. § 580.08 (2016). "If separate parcels of mortgaged

property are not sold separately at a foreclosure sale, the foreclosure sale is void, without any need for the mortgagor to prove additional facts, such as fraud, prejudice, or good cause." *Hunter v. Anchor Bank, N.A.*, 842 N.W.2d 10, 17 (Minn.App. 2013), *review denied* (Minn. Mar. 18, 2014).

▮ In general, the word "tract" is defined to mean "[a] specified parcel of land," and the word "parcel" is defined to mean "a continuous tract or plot of land in one possession, no part of which is separated from the rest by intervening land in another's possession." *Black's Law Dictionary* 1286, 1720 (10th ed. 2014). In the context of section 580.08, a tract or farm is "distinct" if there is "a separation by some natural means or boundary, or by intervening space, and not simply a portion which may be described by arbitrary imaginary lines." *Worley v. Naylor*, 6 Minn. 192, 202, 6 Gil. 123, 129 (1861) (citing Minn. Comp. Stat. ch. 75, § 8 (1859), *renumbered as* Minn. Stat. § 580.08). In determining whether a property consists of separate and distinct tracts, a court should consider "[t]he object with which a body of land is held by the owner or occupant" and "the manner of its use." *Id.* In addition, a court should interpret the statute to ensure that "the mortgaged property shall be so disposed of as to bring the best price possible, consistently with the preservation of the rights of the mortgagee." *Id.* at 203, 6 Gil. at 130. Beyond these principles, "there are no arbitrary and inflexible rules requiring property to be offered and sold in legal subdivisions, or in any particular parcels or quantities." *Id.* Rather, "[e]ach case must depend upon its own particular circumstances." *Id.*

▮ In this case, the evidence shows that the mortgaged property is used as one contiguous parcel of lakeshore property. Leeco previously attempted to sell the property as one parcel, and its own real estate agent stated in an affidavit that the market value of the property would be greatest if it were sold as one parcel. In addition, Cornerstone Bank introduced evidence that three of the tax parcels are, by themselves, too small in area to be separate, buildable lots given the applicable zoning ordinances. All of this evidence supports a conclusion that the mortgaged property is a single tract for purposes of section 580.08.

Leeco's argument is based almost solely on evidence that the property, as platted, is composed of three lots and that, for purposes of property taxes, it is composed of four tax parcels. The supreme court rejected a similar argument in *Worley*, in which one party argued that mortgaged property should have been sold as multiple tracts on the ground that the property consisted of separate government subdivisions. *Id.* at 201-02, 6 Gil. at 128-29. The supreme court reasoned that the legislature did not intend such a result by its use of the word "tracts" and that its use of the word "distinct" does not mean a portion of land "described by arbitrary imaginary lines." *Id.* at 202, 6 Gil. at 129. The supreme court's reasoning in *Worley* effectively undermines Leeco's argument based on the separate tax parcels. Furthermore, the cabin straddles the line between two tax parcels. That fact makes this case similar to *Lalor v. McCarthy*, 24 Minn. 417 (1878), in which a commercial building occupied most of two adjoining lots. *Id.* at 418. The trial court in *Lalor* found that the two lots "constitute one tract of land in fact," and the supreme court affirmed based on the manner in which the property was used and on evidence that the property "would bring much more if sold as one parcel, than if sold as two." *Id.* (citing Minn. Gen. Stat. ch. 81, § 9 (1866), *renumbered as* Minn. Stat. § 580.08). Thus, the mere fact that the mortgaged property in

this case is composed of four tax parcels does not create a genuine issue of material fact as to whether the property consists of "separate and distinct . . . tracts" in light of the manner in which the property actually is configured and used. *See* Minn. Stat. § 580.08.

Because the mortgaged property does not consist of separate and distinct tracts, Cornerstone Bank was not required to sell the property in separate foreclosure sales. Thus, the district court did not err by granting Cornerstone Bank's summary-judgment motion on count 1. In light of that conclusion, we need not consider Cornerstone Bank's argument that Leeco waived its right to object to a single foreclosure sale.

## II.

Leeco also argues that the district court erred by granting Cornerstone Bank's summary-judgment motion with respect to count 2. Leeco contends that, in light of the undisputed facts, Cornerstone Bank misstated the amount due on the mortgage as a matter of law.

▮▮▮▮ In a foreclosure by advertisement, a notice of foreclosure sale must contain, among other things, "the original or maximum principal amount secured by the mortgage" and "the amount claimed to be due on the mortgage on the date of the notice." Minn. Stat. § 580.04(a)(1), (3) (2016). With respect to the latter requirement, "the amount owed on a note and the amount secured by a mortgage may be different." *Business Bank v. Hanson*, 769 N.W.2d 285, 290 (Minn. 2009). It is not "absolutely necessary to state with certainty the exact amount legally due." *Spencer v. Annan*, 4 Minn. 542, 544, 4 Gil. 426, 428 (1860) (citing Minn. Comp. Stat. ch. 75, § 5 (1859), *renumbered as* Minn. Stat. § 580.04). Rather, the caselaw recognizes that a mortgagee, "under a mistake of law

or fact may honestly claim more than by law he would be entitled to." *Id.* In such a situation, "if the other party is not shown to be prejudiced thereby, the sale should not be disturbed." *Id.* The caselaw also recognizes that a mortgagee "may be ignorant of, or contest, certain alleged payments," or "may estimate the amount according to the strict terms of the contract, or may err simply in a computation of the interest." *Id.* In such situations, if a mortgagee "claims more than he could legally recover, it does not necessarily vitiate the sale." *Id.*

▮▮▮▮ However, a mortgagee may not "arbitrarily or wantonly claim in his notice a sum which neither the terms of the contract nor any legitimate calculation based thereon will justify." *Id.* at 544-45, 4 Gil. at 428. A foreclosure sale may be declared invalid if there is "fraud in law, fraud in fact, or actual injury" with respect to "the claiming of more than is either actually legally due, or stipulated for in the contract." *Butterfield v. Farnham*, 19 Minn. 85, 90, 19 Gil. 58, 62-63 (1872) (citing Minn. Comp. Stat. ch. 75 (1859)). A court may draw inferences as to whether a mortgagee had a "fraudulent design." *See id.* at 90, 19 Gil. at 63. In addition, fraud may be inferred if the amount claimed is so "excessive" that it cannot be justified by the terms of the debt. *See id.* In determining whether an overstatement of the amount due is fraudulent, a court should consider whether the overstatement "would necessarily have the effect to deter bidders." *Id.*

▮▮▮▮ In this case, paragraph 13 of the notice of foreclosure sale states that, as of the date of the notice, "the amount due on the Mortgage, including taxes, if any, paid by the holder of the Mortgage, is $4,178,993.94." The question on appeal is, in essence, whether this is a justifiable statement of "the amount claimed to be

due on the mortgage on the date of the notice." *See* Minn. Stat. § 580.04(a)(3). Leeco's argument is based on the fact that the maximum principal amount of the line of credit is $1,200,000. A mortgage may, by its express terms, limit the amount of indebtedness that it secures. *See Business Bank*, 769 N.W.2d at 289. But Leeco's argument is flawed because the mortgage secures more than just Jacob North Printing's line of credit.

The fifth paragraph of the mortgage states that it secures indebtedness *"including, without limitation, a revolving line of credit."* (Emphasis added.) The fourth paragraph of the mortgage states that it "secures all obligations, debts and liabilities . . . of either Grantor or Borrower to Lender . . . whether now existing or hereafter arising." Given the express terms of the mortgage, the amount due under the mortgage is the sum of the amount due on Jacob North Printing's line of credit (which had a maximum principal amount of $1,200,000 but could have increased to more than that amount due to unpaid interest) and the amount due on other debts that Jacob North Printing or Leeco owed to Cornerstone Bank. In its

bankruptcy disclosures, Leeco stated that it had liabilities to Cornerstone Bank in the amount of $4,800,000. Accordingly, Cornerstone Bank did not overstate the amount due on the mortgage by stating that the amount was $4,178,993.94.

Thus, the district court did not err by granting Cornerstone Bank's summary-judgment motion on count 2.

## DECISION

The district court did not err by concluding, as a matter of law, that the mortgaged property does not consist of separate and distinct tracts. The district court did not err by concluding, as a matter of law, that Cornerstone Bank's notice of foreclosure sale did not misstate the amount due on the mortgage.

**Affirmed.**