# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 12

### OCTOBER TERM, A.D. 2023

### January 30, 2024

LFP CONSULTING, LLC, a North
Dakota limited liability company,

Appellant
(Plaintiff),

v.                                                          S-23-0125

DAVID EDWARD LEIGHTON,

Appellee
(Defendant).

*Appeal from the Chancery Court*
The Honorable Steven K. Sharpe, Judge

*Representing Appellant:*
Rick Koehmstedt, Judith Studer of Schwartz, Bon, Walker & Studer, LLC, Casper,
Wyoming.  Argument by Ms. Studer.

*Representing Appellee:*
Keith J. Dodson, Thomas W. Rumpke of Williams, Porter, Day & Neville, P.C.,
Casper, Wyoming; Mark Western of Fremstad Law Firm, Fargo, North Dakota.
Argument by Mr. Western.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.
Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne,
Wyoming 82002, of typographical or other formal errors so correction may be made before final
publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   LFP Consulting, LLC (LFP), a financial advisory company, employed David Edward Leighton as a financial advisor.  After Mr. Leighton resigned, LFP sued him in Wyoming chancery court for breach of contract and various torts.  The chancery court dismissed LFP's complaint for improper venue based upon a clause in the parties' contract selecting Minnesota as the forum for disputes between them (forum selection clause).  We reverse and remand because the chancery court erroneously concluded LFP did not have the right to unilaterally waive the forum selection clause.

## ISSUE

[¶2]   The dispositive issue on appeal is:  Did the chancery court err by dismissing LFP's complaint for improper venue based on its conclusion that LFP could not unilaterally waive the forum selection clause in the parties' contract?[1]

## FACTS

[¶3]   LFP hired Mr. Leighton in June 2018 to work as a "paraplanner" financial advisor in its Worland office.  Because Mr. Leighton was not licensed as a financial advisor and had no financial planning clients, LFP arranged for him to become licensed through a Minnesota company, Ameriprise Financial Services, Inc. (Ameriprise Financial).  Once licensed, Mr. Leighton entered into an Associate Financial Advisor Agreement (AFA) with Ameriprise Financial, which provided him with a securities registration and the right to act as its agent.[2]

[¶4]   Mr. Leighton agreed in the AFA that the records and materials associated with his financial planning activities belonged to Ameriprise Financial and must be returned to it upon termination of their contractual relationship.  He promised in Section 8 of the AFA not to divulge Ameriprise Financial's trade secrets or confidential information or use them except to perform his duties to Ameriprise Financial.  He also agreed that, for one year after termination of his relationship with Ameriprise Financial, he would not contact, solicit, or provide services to any of Ameriprise Financial's clients.  Ameriprise Financial was permitted to seek an injunction "to keep [Mr. Leighton] from violating" the confidentiality and non-compete provisions of the AFA.  Section 11 of the AFA stated it was governed by Minnesota law, and Mr. Leighton agreed to litigate "any action at law"

---

[1] LFP also asserts the chancery court erred by ruling its separate claims, which arose from its employment relationship with Mr. Leighton and were based on Wyoming law rather than the AFA, must be litigated in Minnesota.  Our decision that the chancery court erred by dismissing LFP's complaint for improper venue makes consideration of this second issue unnecessary.

[2] Mr. Leighton claims there are other agreements which apply to the substantive issues in this case.  However, those agreements are not at issue in this appeal.

1

"related to" the AFA in "the State of Minnesota," which was where Ameriprise Financial principally conducted business.

[¶5]     On November 9, 2021, Mr. Leighton resigned from LFP and Ameriprise Financial. He immediately began conducting financial advising business through Heart Mountain Wealth Management (HMWM), a limited liability company he had already registered in Wyoming. HMWM associated itself with Golden State Wealth Management.

[¶6]     Ameriprise Financial assigned some of its rights under the AFA to LFP, including the right to waive the forum selection clause. LFP filed a complaint against Mr. Leighton in Wyoming chancery court and attached an express waiver of the forum selection clause. According to LFP's complaint, "HMWM perform[ed] the same essential financial planning and wealth management services as LFP" and was its "direct competitor." LFP stated five causes of action against Mr. Leighton including: 1) injunctive relief to restrain Mr. Leighton from violating the AFA; 2) breach of the AFA by improperly using LFP's and Ameriprise Financial's confidential information and trade secrets, providing financial planning services to LFP's clients, and soliciting LFP's existing and potential clients; 3) misappropriation of trade secrets in violation of the Uniform Trade Secrets Act, enacted in Wyoming at Wyo. Stat. Ann. §§ 40-24-101 through 110 (2023); 4) interference with contract or prospective advantage; and 5) unfair competition.

[¶7]     Mr. Leighton moved to dismiss LFP's complaint on multiple grounds including, as relevant here, for improper venue under the AFA's forum selection clause. The chancery court dismissed LFP's complaint, concluding LFP did not have the right to unilaterally waive the forum selection clause and the clause required LFP to litigate matters arising from, or related to, the AFA in Minnesota. It also ruled that, "[f]or the purposes of judicial economy and efficiency," all of LFP's claims should be decided together in Minnesota. LFP filed a timely notice of appeal from the chancery court's dismissal.

## STANDARD OF REVIEW

[¶8]     The AFA is governed by Minnesota law, but Wyoming law applies to procedural matters including the standard of review. *Denbury Onshore, LLC v. APMTG Helium LLC,* 2020 WY 146, ¶ 24, 476 P.3d 1098, 1105 (Wyo. 2020) (citing *Smithco Eng'g, Inc. v. Int'l Fabricators, Inc.,* 775 P.2d 1011, 1018 (Wyo. 1989) ("Clearly, the law of the forum controls procedural matters.")).

[¶9]     Mr. Leighton moved to dismiss LFP's complaint under Wyoming Rule of Civil Procedure (W.R.C.P.) 12(b)(6) for "failure to state a claim upon which relief can be granted[.]" He presented several grounds for dismissal, but the chancery court dismissed LFP's complaint for improper venue. W.R.C.P. 12(b)(3) governs motions to dismiss for improper venue. W.R.C.P. 12(b)(3) (a party may present the defense of improper venue by motion); *Ecocards v. Tekstir, Inc.,* 2020 WY 38, ¶ 10, 459 P.3d 1111, 1115 (Wyo. 2020)

(Rule 12(b)(3) governs motions to dismiss for improper venue).

[¶10]  To determine whether a case should be dismissed for improper venue, the court accepts "the well-pleaded allegations in the plaintiff's complaint as true." *Ecocards,* ¶ 12, 459 P.3d at 1116 (citing *Saunders v. Saunders,* 2019 WY 82, ¶ 11, 445 P.3d 991, 996 (Wyo. 2019), *Espinoza v. Evergreen Helicopters, Inc.,* 376 P.3d 960, 982 (Or. 2016), and 5B Fed. Prac. & Proc. Civ. § 1352 (3d. ed. 2019) (discussing identical federal rule)).  The court also draws all reasonable inferences and resolves all factual conflicts in favor of the plaintiff.  *Ecocards,* ¶ 12, 459 P.3d at 1116; *Saunders,* ¶ 11, 445 P.3d at 996.  It may examine affidavits presented by the defendant which contradict the facts stated in the complaint regarding venue.  *Ecocards,* ¶ 12, 459 P.3d at 1116; *Saunders,* ¶ 11, 445 P.3d at 996.  In this case, the chancery court considered only the complaint and incorporated attachments.  *See SH v. Campbell Cnty. Sch. Dist.,* 2018 WY 11, ¶ 5, 409 P.3d 1231, 1233 (Wyo. 2018) (reviewing complaint and attachments when deciding a motion to dismiss).

[¶11]  We generally review for an abuse of discretion a district court's ruling on a motion to dismiss based on improper venue.  *Saunders*, ¶ 10, 445 P.3d at 996; *Bourke v. Grey Wolf Drilling Co.,* 2013 WY 93, ¶ 14, 305 P.3d 1164, 1167 (Wyo. 2013).  However, this case requires that we answer the legal question of whether LFP could unilaterally waive the AFA's forum selection clause.  We review the trial court's determinations on questions of law de novo.  *Ecocards,* ¶ 11, 459 P.3d at 1116 (citing *Saunders,* ¶ 10, 445 P.3d at 996, and *BTU W. Res., Inc. v. Berenergy Corp.,* 2019 WY 57, ¶ 14, 442 P.3d 50, 54-55 (Wyo. 2019)).

## DISCUSSION

[¶12]  The AFA contains a provision directing that Minnesota law governs its "validity, interpretation, performance and enforcement[.]"  We stated in *Ecocards* that "'when the contract contains a choice-of-law clause, a court can effectuate the parties' agreement concerning the forum only if it interprets the forum [selection] clause under the chosen law.'"  *Ecocards,* ¶ 26, 459 P.2d at 1119 (quoting *Yavuz v. 61 MM, Ltd.,* 465 F.3d 418, 428 (10th Cir. 2006)).  Thus, "Wyoming courts will enforce choice-of-law provisions and apply foreign law when doing so is not 'contrary to the law, public policy, or the general interests of [our] citizens.'"  *Finley Res., Inc. v. EP Energy E&P Co., L.P.,* 2019 WY 65, ¶ 9, 443 P.3d 838, 842 (Wyo. 2019) (quoting *Res. Tech. Corp. v. Fisher Sci. Co.*, 924 P.2d 972, 975 (Wyo. 1996)).  Consistent with this precedent, the chancery court applied Minnesota law to the "threshold" choice-of-forum issues.  The parties do not dispute that Minnesota law applies to the issue on appeal.  We will, therefore, use Minnesota law to determine whether LFP could unilaterally waive the AFA's forum selection provision.

[¶13]  The forum selection clause, which is found in Section 11(A) of the AFA, reads:

3

You expressly (i) consent to personal jurisdiction in the state and federal courts located in the State of Minnesota, (ii) waive any argument that venue in any such forum is not convenient, and (iii) agree that any action at law, suit in equity, judicial proceeding, or arbitration arising directly, indirectly, or otherwise in connection with, out of, related to or from this agreement or any provision hereof, shall be litigated only in the appropriate state or federal court in the State of Minnesota, County of Hennepin.

[¶14] LFP executed a document, which it attached to the complaint, waiving "the forum selection and venue provisions stated in Section 11(A) of the AFA[.]" The chancery court ruled LFP was not entitled to unilaterally waive the forum selection clause because the clause benefited Mr. Leighton. Since Mr. Leighton did not agree to waive the requirement that disputes under the AFA be litigated in Minnesota, the chancery court ruled Wyoming was not the proper forum for LFP's action and dismissed the case "without prejudice to LFP refiling in the appropriate jurisdiction." LFP claims the chancery court erred by denying it the right to unilaterally waive the forum selection clause and maintain the action in Wyoming.

[¶15] The Minnesota Supreme Court recognized in *Miracle Constr. Co. v. Miller,* 87 N.W.2d 665, 670 (Minn. 1958), that a party may unilaterally waive a provision included in a contract for its sole benefit. There, the parties executed a contract for the sale of property conditioned upon annexation of the property into an adjacent village. *Id.* at 668. The annexation was required so the purchaser could secure financing. *Id.* After the sellers reneged, the purchaser sued for specific performance of the contract. *Id.* The sellers claimed the contract was null and void because the property had not been annexed in accordance with the terms of the contract. *Id.* at 670. The Minnesota Supreme Court held the purchaser could waive the annexation requirement because it had been inserted into the sales contract for the purchaser's sole benefit. *Id.* at 670-71. The court stated the rule of law as: "[A] party may waive a condition precedent to his own performance of a contractual duty, when such condition precedent exists for his sole benefit and protection, and compel performance by the other party who has no interest in the performance or nonperformance of such condition." *Id.* at 670. *See also, Dolder v. Griffin,* 323 N.W.2d 773, 778 (Minn. 1982) (reciting the unilateral waiver rule from *Miracle Constr. Co.*); *Columbia Dev., LP v. Minneapolis Park & Recreation Bd.,* No. 27-CV-09-41, 2010 WL 2650566, at *2 (Minn. Ct. App. 2010) (same).

[¶16] Minnesota case law is in accord with the "well-settled" principle across the country "that a contracting party may unilaterally waive a provision of the contract, including, as a general rule, any condition precedent which has been placed in the contract for that party's benefit." 13 WILLISTON ON CONTRACTS § 39:24 (4th ed. 2023) (footnotes omitted). *See also, Rizas v. Vail Resorts, Inc.,* No. 08-CV-139-J, 2009 WL 10664834, at *2 (D.Wyo.

4

2009) ("[T]he law of waiver of contract provisions is widespread and well accepted. A party to a contract may waive a provision of the contract that was included for his benefit." (citing *Lanna v. Greene*, 399 A.2d 837, 841 (Conn. 1978), and *Takahashi v. Pepper Tank & Contracting Co.*, 131 P.2d 339, 354 (Wyo. 1942))) (some quotation marks omitted). However, "it is equally true that 'a waiver of contract requirements and conditions may not be made unilaterally when it would deprive the nonwaiving party of a benefit under the provision in question.'" *Avicanna Inc. v. Mewhinney,* 487 P.3d 1110, 1113-14 (Colo. App. 2019 (quoting 13 WILLISTON ON CONTRACTS § 39:24). "[W]hen one party seeks to enforce a contract and compel performance by the other party despite the nonoccurrence of a condition precedent to performance, a determination must be made regarding whether the condition was inserted in the contract solely for the benefit of the party seeking to enforce the contract despite its nonoccurrence." 13 WILLISTON ON CONTRACTS § 39:24 (footnotes omitted).

[¶17] This unilateral waiver principle is applicable to forum selection clauses. *See, e.g., Avicanna,* 487 P.3d at 1113-14; *Open Text Corp. v. Grimes,* 262 F.Supp.3d 278, 285-86 (D.Md. 2017); *Rizas,* 2009 WL at *2-3. In *Northland Cap. Fin. Servs., LLC v. Robinson,* 976 N.W.2d 252, 259-61 (S.D. 2022), a case relied upon by Mr. Leighton and the chancery court, the South Dakota Supreme Court determined that Minnesota would follow the general rule that a party to a contract can unilaterally waive a forum selection clause if it was included for that party's sole benefit.

[¶18] To determine whether LFP could unilaterally waive the forum selection provision in the AFA, we must decide which party or parties benefitted from the provision. As assignee of the AFA, LFP stepped into Ameriprise Financial's shoes. "An assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 803 (Minn. 2004). *See also, Prancing Antelope I, LLC v. Saratoga Inn Overlook Homeowners Assoc., Inc.,* 2021 WY 3, ¶ 37, 478 P.3d 1171, 1181 (Wyo. 2021) ("An assignment is a contractual undertaking by one party of the rights and obligations of another, such that the second steps into the shoes of the first.") (quotation marks and citation omitted). We will consider the interests of the original parties to the AFA, Ameriprise Financial and Mr. Leighton, keeping in mind that LFP, as the assignee, ultimately obtains Ameriprise Financial's rights in this suit.

[¶19] We begin with the express language of the contract. *See Avicanna,* 487 P.3d at 1113-15 (using the contractual language to interpret an unambiguous forum selection clause); *Open Text,* 262 F.Supp.3d at 286 (a party's ability to waive a forum selection clause derives from the agreement itself). Minnesota and Wyoming rules for interpreting contracts are similar. *Bradley v. Bradley,* 2007 WY 117, ¶ 15, 164 P.3d 537, 542 (Wyo. 2007). "[T]he primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). Interpretation of an unambiguous contract is a question of law for the

court. *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.,* 913 N.W.2d 687, 692 (Minn. 2018) (citing *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003)). *See also, Hunter v. Reece,* 2011 WY 97, ¶ 18, 253 P.3d 497, 502 (Wyo. 2011) (the interpretation of an unambiguous contract is a matter of law for the court).

[¶20]   A court determines the intent of the parties to an unambiguous contract "from the plain language of the instrument itself." *Travertine Corp. v. Lexington-Silverwood,* 683 N.W.2d 267, 271 (Minn. 2004). *See also, Linn v. BCBSM, Inc.,* 905 N.W.2d 497, 504 (Minn. 2018) ("'[T]he plain and ordinary meaning of the contract language controls, unless the language is ambiguous.'" (quoting *Bus. Bank v. Hanson*, 769 N.W.2d 285, 288 (Minn. 2009))); *Claman v. Popp*, 2012 WY 92, ¶ 26, 279 P.3d 1003, 1013 (Wyo. 2012) (the words used in a contract are assigned the plain meaning a reasonable person would give them) (citation omitted). The court interprets the contract "in a way that gives all of its provisions meaning" and harmonizes all the clauses of the contract. *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995); *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525-26 (Minn. 1990). *See also, Bradley*, ¶ 15, 164 P.3d at 542 (under both Wyoming and Minnesota laws, a "contract is construed as a whole and, if possible, all parts of the contract are harmonized") (citations omitted).

[¶21]   Neither party claims the AFA is ambiguous. The AFA was an Ameriprise Financial form, which stated at the outset the term "you" referred to Mr. Leighton. It stated: "[As] consideration [for] the promises and covenants given by you in [the AFA], Ameriprise Financial hereby grants to you during the term of this Agreement a non-exclusive, limited, terminable, royalty-free and non-assignable or transferable license . . . to use the Proprietary Marks of Ameriprise Financial . . . in the performance of your obligations and undertakings [under the AFA]." In return for his execution of the AFA, Mr. Leighton was provided a "securities registration by Ameriprise Financial" and the "right to act as an agent of Ameriprise Financial . . . ."

[¶22]   Mr. Leighton made numerous promises in the AFA which were framed as directives from Ameriprise Financial to Mr. Leighton. For example, Section 8 of the AFA stated: "You agree that you will not reveal the contents of any Ameriprise Financial property or other confidential information . . . except in connection with carrying out your duties under" the AFA, and ". . . you will not, during the term of this Agreement and for a period of one (1) year following the termination of your affiliation with Ameriprise Financial" contact its clients or solicit them "to open an account other than an Ameriprise Financial account or to sell any investment, financial or insurance products or services other than through Ameriprise Financial."

[¶23]   The forum selection clause was also phrased as a directive to Mr. Leighton. In it, Mr. Leighton expressly consented to personal jurisdiction in Minnesota courts, waived any argument that such venue was not convenient, and "agree[d]" that "any action at law" "related to" the AFA "shall be litigated only in the appropriate state or federal court" in

Minnesota, which was Ameriprise Financial's principal place of business. The chancery court ruled that Mr. Leighton and Ameriprise Financial were mutually bound by the forum selection clause because it used the term "agree." The court stated that "'[a]gree' signals a mutual understanding between the contracting parties about the . . . choice of forum." It pointed to Black's Law Dictionary's definition of "agree" as "[t]o unite in thought; to concur in opinion or purpose" and "[t]o exchange promises; to unite in an engagement to do or not do something." *Agree*, BLACK'S LAW DICTIONARY (11th ed. 2019). However, the court failed to recognize that "agree" is also defined, in common parlance, as "to consent to as a course of action." https://www.merriam-webster.com/dictionary/agree (last visited January 29, 2024).

[¶24] There is no question that Mr. Leighton and Ameriprise Financial exchanged promises in the AFA. However, that does not mean each provision equally bound both parties or that the inclusion of the term "agree" in the forum selection clause signaled a mutual obligation. By inserting "You" before "agree," the parties clearly intended for Mr. Leighton to consent that "any action at law" "shall be litigated only" in Minnesota. Critically, the forum selection clause did not contain a reciprocal promise from Ameriprise Financial to bring suit in Minnesota. Ameriprise Financial, therefore, had the option of filing suit in Minnesota and holding Mr. Leighton to his promise not to contest venue in that state or waiving the forum selection clause and filing suit in another state with jurisdiction over the action.

[¶25] *Open Text* provides a comparable example. Mr. Grimes worked for Open Text under a written agreement which contained confidentiality, non-compete, and forum selection clauses. *Open Text*, 262 F.Supp.3d at 280-81. The forum selection clause stated "the courts of the Province of Ontario . . . shall [have] exclusive jurisdiction to determine all disputes relating to this Agreement and all the rights and obligations created thereby." *Id*. The forum selection clause also included the following promise from Mr. Grimes: "I hereby irrevocably attorn to the jurisdiction of the courts of the Province of Ontario." *Id.* at 281. Open Text sued Mr. Grimes for breach of the agreement in his home state of Maryland, and he filed a motion to dismiss for forum non conveniens based upon the forum selection clause. *Id.* at 280, 284. The federal district court concluded Open Text could unilaterally waive the forum selection clause because it was included in the employment agreement solely for its benefit. *Id.* at 285-86. Mr. Grimes agreed to "irrevocably attorn to the jurisdiction of the courts of the Province of Ontario," but Open Text did not, so it was not foreclosed from filing suit in Mr. Grimes' home state. *Id.* at 286. Like in *Open Text,* Mr. Leighton promised in the AFA forum selection clause not to object to litigation of any dispute under the AFA in Minnesota, but Ameriprise Financial did not promise to file suit in that forum.

[¶26] In comparison, the forum selection clause in *Northland Cap.* did contain an express agreement from both parties to the contract to litigate in Minnesota. The provision stated:

It is agreed between the parties that this Lease has been negotiated within Stearns County, Minnesota, and finally executed within Stearns County, Minnesota, and accordingly, the Lease and all related documentation shall be governed by, and construed in accordance with, the laws of the State of Minnesota (without regard to principles of conflicts of laws) and any suit by either of the parties pursuant to this Lease shall be maintained in and the venue for any such litigation shall be in Stearns County District Court, Stearns County, Minnesota.

*Northland Cap.,* 976 N.W.2d at 254. The *Northland Cap.* forum selection clause clearly stated "[i]t is agreed between the parties" that "any suit by either of the parties . . . shall be maintained in . . . Minnesota." *Id.* Because it was "agreed between the parties" that "any suit by either of the parties" would be litigated in Minnesota, the language in *Northland Cap.* clearly bound both parties. *Id. See also, Imperium Ins. Co. v. Allied Ins. Brokers, Inc.,* No. CCB-12-1373, 2012 WL 4103889, * 3 (D.Md. 2012) (forum selection clause stating that "each party waive[d] any right to object to venue" did not solely benefit one party).

[¶27] The forum selection language in this case is different. In *Northland Cap.,* there was an express agreement "between the parties" to litigate "any suit" by "either of the parties" in Minnesota, while the forum selection clause in this case only bound Mr. Leighton ("You") to litigate in Minnesota. Under subsections (i) and (ii), if Ameriprise Financial decided to bring suit in Minnesota, Mr. Leighton consented to personal jurisdiction in that state and waived any forum non conveniens argument. Subsection (iii), which states: "You . . . agree that any action at law . . . shall be litigated only in . . . Minnesota," contained an individual agreement by Mr. Leighton to litigate in Minnesota. There was no reciprocal promise by Ameriprise Financial to litigate only in Minnesota. Because the promise was not "between the parties" like in *Northland Cap.,* it applied only to Mr. Leighton. The forum selection clause clearly evinces an intent to benefit Ameriprise Financial by giving it the option of litigating in its home state. However, because the forum selection clause did not similarly bind Ameriprise Financial, it does not show an intent to benefit Mr. Leighton.

[¶28] Mr. Leighton asserts that, when the AFA is read as a whole, it is clear the forum selection clause was mutually beneficial to him and Ameriprise Financial. He notes that the introductory section of the AFA stated that "[b]oth you and Ameriprise Financial promise to comply with the terms of this Agreement . . . ." This provision simply acknowledges both parties made promises in the AFA. It does not establish the forum selection clause created a mutual obligation to litigate in Minnesota. As stated above, the AFA contained many clauses which, in exchange for the licensing and registration rights provided by Ameriprise Financial, individually bound Mr. Leighton, including the non-compete and confidentiality clauses.

8

[¶29] In ruling the forum selection clause was not unilaterally waivable by LFP, the chancery court determined the arbitration provision in the AFA "explicitly subject[ed] Ameriprise Financial to the forum selection clause." The arbitration provision stated: "Unless otherwise agreed to in writing by both parties, you agree to arbitrate any . . . claim . . . that may arise between you and Ameriprise Financial . . . ; however, the parties agree that [c]laims brought by Ameriprise Financial pursuant to Section 8 of this Agreement will not be arbitrated, but shall be subject to the jurisdiction of the courts as provided in Section 11 of this Agreement . . . ." As stated above, Section 8 of the AFA contained the non-compete and confidentiality clauses, and Section 11 contained the forum selection clause. Under the arbitration provision, "both parties" agreed disputes regarding Section 8 would not be arbitrated. The crux of the provision was to remove disputes over the non-compete and confidentiality provisions from the arbitration requirement. However, the arbitration provision did not expand Mr. Leighton's rights under Section 11. Instead, it simply referred the parties back to Section 11 which, as we have previously noted, gave Ameriprise Financial the unilateral option of either requiring Mr. Leighton to litigate in Minnesota or waive the provision and litigate in another state with jurisdiction over the dispute.

[¶30] The chancery court also ruled that, if the forum selection clause is interpreted as unilaterally waivable by Ameriprise Financial, the language requiring "any action at law" to be "litigated only in" Minnesota would be rendered meaningless. Like Wyoming, Minnesota law requires a court to interpret provisions of a contract in harmony and to give each one meaning. *Current Tech. Concepts,* 530 N.W.2d at 543; *Bradley*, ¶ 15, 164 P.3d at 542. However, allowing Ameriprise Financial to unilaterally waive the forum selection clause does not render any of its language meaningless because it required Mr. Leighton to litigate "any action at law" in Minnesota, if Ameriprise Financial so chose.

[¶31] LFP, on the other hand, argues the "waiver" provision in Section 11(B) of the AFA confirms its right to unilaterally waive the forum selection clause. That section states: "If Ameriprise Financial waives any provisions of this Agreement, the waiver applies only to that provision, not to any other parts of the Agreement. A waiver is effective only when it is in writing and signed by an authorized Ameriprise Financial officer." We do not read § 11(B) as "granting" Ameriprise Financial a right to unilaterally waive the forum selection provision or, for that matter, any other provision of the AFA. It simply established the requirements for an effective waiver and recognized that, if Ameriprise Financial waived a provision of the AFA, the remainder of the agreement would remain enforceable.

[¶32] Nevertheless, the plain language of the AFA, as a whole, and the forum selection clause, specifically, shows that while Mr. Leighton consented to litigation over the AFA in Minnesota, Ameriprise Financial did not promise to only litigate in Minnesota. The chancery court erred by concluding the plain language of the AFA prevented Ameriprise Financial and its assignee, LFP, from unilaterally waiving the forum selection clause.

9

[¶33] Finally, the chancery court relied on *Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.,* 320 N.W.2d 886, 889 (Minn. 1982), to conclude the forum selection clause benefited Mr. Leighton because it offered "'a degree of [jurisdictional] certainty' and served to 'obviat[e] jurisdictional struggles.'" *Hauenstein* is not on point. That case was not discussing waiver of a forum selection clause but rather the general policy in favor of recognizing contracting parties' right to incorporate forum selection clauses into their agreements. *Id.* at 889-90. If we accept the chancery court's reasoning that both parties to a contract are always benefited by a forum selection clause because it offers jurisdictional certainty, then such clauses would never be subject to waiver which is contrary to the law.

[¶34] The court in *Open Text,* 262 F.Supp.3d at 286-87, was not persuaded by similar argument from Mr. Grimes. He claimed an interest "in the predictability that the contract would be litigated in Canada," the forum identified in the parties' agreement. *Id.* at 286. The court rejected the argument because Mr. Grimes was "not present [in Canada], ha[d] no interests there, and committed the alleged wrongful actions in Maryland," where the action was filed. *Id.* Looking at the parties' relationships to the chosen forum and the forum where suit was filed, the court stated "[a]lthough the interest in predictability is critical to many commercial contracts, it is of lesser importance when the [plaintiff] subjects itself to the jurisdiction of the courts where the defendant resides and where, in view of the tort and statutory claims alleged, the wrongful acts occurred in the jurisdiction where the suit is filed." *Id.* (emphasis omitted). Open Text was the only party to the contract in that case with ties to Canada -- it was a Canadian corporation headquartered in Waterloo, Ontario. *Id.* at 286. "[Mr.] Grimes, by contrast, worked for Open Text in Maryland and committed the alleged wrongful acts in Maryland." *Id.* Mr. Grimes' lack of relationship to Canada supported allowing Open Text to waive the forum selection provision in the parties' agreement. *Id.* at 286-87.

[¶35] *Rizas* offers another example where the court considered the parties' relationships to the chosen forum in determining whether a forum selection clause was waivable. The survivors of a tour company's clients filed suit against the company in Wyoming federal district court after the clients were killed in a rafting accident in Wyoming. *Rizas,* 2009 WL 10664834, *1. The tour company primarily did business in Connecticut, and the clients had signed an agreement which contained a clause stating that Connecticut law applied to any legal actions against the company. *Id.* at *1-2. The survivors advocated for application of Connecticut law in accordance with the choice-of-law provision. *Id.* at *2. The tour company wanted to waive the choice-of-law provision and have Wyoming law applied to the dispute. *Id.* at *2-3.

[¶36] The federal district court allowed the tour company to waive the choice-of-law provision after concluding the provision was included in the contract to benefit the company. *Id.* at *2-3. The tour company drafted the contract, which clearly stated that Connecticut law would apply to "all legal claims . . . against [the tour company]." *Id.* at

10

*2. According to the court, the provision assured the tour company of the option of litigating claims against it "under the law with which it [was] most familiar." *Id.* Any benefit to the clients or the survivors from the choice-of-law provision was "by happenstance rather than by intention." *Id.* The district court also noted "none of the [clients] or their survivors" were "residents of Connecticut," so they would receive "little to no benefit" from the application of Connecticut law. *Id.* The clients' and survivors' lack of relationships to Connecticut supported the court's decision to allow the tour company to unilaterally waive the choice-of-law provision. *Id.*

[¶37] We agree with the reasoning in *Open Text* and *Rizas*; the party objecting to waiver of a forum selection clause must show a benefit aside from "jurisdictional certainty." This will be more difficult when the objecting party has no relationship to the forum identified in the parties' agreement and suit is filed in a jurisdiction with ties to the objecting party and/or the dispute. Here, there is no indication Mr. Leighton had any relationship to Minnesota. The complaint stated Mr. Leighton was a resident of Wyoming, worked for LFP in Wyoming, and the "acts and omissions giving rise to [LFP's] claims against [Mr. Leighton] occurred in . . . Wyoming." Mr. Leighton did not have a relationship with Minnesota to justify the chancery court's refusal to allow LFP to waive the forum selection clause.

## CONCLUSION

[¶38] The chancery court erred by dismissing LFP's complaint for improper venue. LFP was entitled to unilaterally waive the forum selection clause because it was intended to solely benefit Ameriprise Financial and, thus, LFP. Furthermore, Mr. Leighton had no relationship to Minnesota which would support venue in that state's courts.

[¶39] Reversed and remanded for further proceedings consistent with this decision.

11